ORIGINAL

# COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

Name: __TREVINO__     __ROBERT__     __NMN__
      (Last)         (First)         (Middle)

Prisoner Number: __J-64367__

Institutional Address: __MULE Creek (MC) State Prison__
__A1-116 L__
__P.O. Box - 409020__
__IONE, CALIFORNIA   95640__

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**FILED**
**Mar 21, 2023**
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

__ROBERT TREVINO__
(Enter your full name.)

VS.

E. Dotson; T. Ross; S. Newcomb; D. Cary;
D. Ambriz; F. Medina; K. McKelroy;
J. Stevenson; R.E. Binkele; D. Vega;
; C. Martella; B. Hopkins;
W. Waterman; P. Lord; C. Sevier; D. Anguiano;
M. Perez; G. Collier; E. Elias; S.Milenewicz;
A. Mendoza; G. Pesenhofer; V. Solis and dy
B. Hedrick; Z. Desta; G. Pesenhofer.
RUEDA, ET AL.
(Enter the full name(s) of the defendant(s) in this action.)

Case No. __23-cv-1311-TSH__
(Leave blank; to be provided by Clerk of Court)

**COMPLAINT UNDER THE
CIVIL RIGHTS ACT,
42 U.S.C. § 1983**

## I. Exhaustion of Administrative Remedies.

*Note:* You must exhaust available administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.

A. Place of present confinement __Mule Creek State Prison__ , __Ione, CALIF.__

B. Is there a grievance procedure in this institution?   **YES** ■    NO ☐

C. If so, did you present the facts in your complaint for review through the grievance
procedure?   YES ■    NO ☐

D. If your answer is YES, list the appeal number and the date and result of the appeal at each
level of review. If you did not pursue any available level of appeal, explain why.

   1. Informal appeal: __The appeal was not processed according to__
__CCR Title 15 § 3084. Please see the attached.__

COMPLAINT *Page 1 of 4*

(1 of 38)

2. First formal level: ___N/A___

3. Second formal level: ___N/A___

4. Third formal level: ___N/A___

E.   Is the last level to which you appealed the highest level of appeal available to you?

   YES ☐   NO☐   N/A

F.   If you did not present your claim for review through the grievance procedure, explain why.

   The timely appeal dated 4-22-2012, was intentionally discarded.

## II.   Parties.

A.   Write your name and present address.  Do the same for additional plaintiffs, if any.

   Mr. Robert Trevino  J-64367
   Mule Creek State Prison / A1-116 L
   P.O. Box 409020 / IONE, CALIF. 95640

B.   For each defendant, provide full name, official position and place of employment.

(1) E. Dotson, (c/o) Reporting Officer, Salinas Valley State Prison (SVSP), P.O. Box 1050, Soledad, CALIF. 93960:

   (2) T. Ross, (c/o) Investigations Service Unit (ISU), same as above...

   (3) S. Newcomb, ISU, same as above...

   (4) D. Cary, Sgt. ISU, same as above

   (5) D. Ambriz, Sgt. Responding staff, and undersigner

COMPLAINT *Page 2 of 4*

(2 of 38)

of CRIME / INCIDENT REPORT PART A1 - SUPPLEMENT, CDCR 837-A1, Log no.
SVSP-FAY-11-07-0604, and dated 7-15-2011; Incident time 07:25, and

place of employment, same as above.

(25) Z. Desta (Deputy Attorney General) Office of the Attorney General, 300 South Spring Street Los Angeles, CALIF. 90013

(6) E. Medina, (Appeals Coordinator), same as above.

(7) K. Mc Kelroy, (Appeals Coordinator) same as above.

(8) C. Martella, (Staff Services Analyst) same as above.

(9) B. Hopkins, (Senior Hearing officer - (SHO)) same as above, and undersigner of Rules Violation Report (Exhibit-1) Log no. A11-07-0052, dated 7-15-11, and Time 07:25 hours.

(26) Glenn Pesenhofer, (Deputy D.A.) office of the District Attorney 240 Church Street - P.O. Box-1131 Salinas, CALIF. 93902. phone (831) 755-5070 FAX (831) 755-5068

(10) V. Solis, (Captain (A)), same as above, and undersigner of Rules Violation Report (RVR) (Exhibit-1),

(11) R.E. Binkele, (Captain-Facility-A) same as above, and undersigner of CRIME / INCIDENT Report (Exhibit 3).

(12) J. Stevenson, (Lieutenant / Incident Commander, same as above.

(13) D. Vega (C/O) Responding officer, same as above.

(14) W. Waterman, (Investigative Employee (I.E.)), and same as above, Exhibit-23,

(27) RUEDA (CCI) employed at Salinas Valley State Prison (SVSP); P.O. Box -1050 Soledad, CALIF. 93960

(15) P. Lord, (Investigative Employee) and same as above.

(16) C. Sevier (LVN) Medical Dept., same as above

(17) D. Anguiano, (C/O) Control Booth Officer, and same as above.

(18) M. Perez (C/O) Responding officer, same as above.

(19) G. Collier (C/O) Responding officer, same as above.

(20) E. Elias, (C/O), Responding officer, same as above.

(21) S. Milenewicz, (C/O) Responding officer, same as above.

(22) A. Mendoza, (C/O) Responding officer, same as above.

(23) G. Pesenhofer (Deputy D.A.) of Monterey County, (Exhibit-19), 240 Church Street, P.O. Box-1131 Salinas, CALIF. 93902.

(24) B. Hedrick, (Chief Disciplinary Officer) same as above.

All of the above Defendants, et al., are being sued at all times herein, in their Individual and official Capacities, for violating Plaintiffs Civil Rights.

(3 of 38)

## III. Statement of Claim.

State briefly the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

_Please see the attached " Factual Allegations "_

## IV. Relief.

Your complaint must include a request for specific relief. State briefly exactly what you want the court to do for you. Do not make legal arguments and do not cite any cases or statutes.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Signed this 15th day of ___MARCH___, 20 23

_Mr. Robert Trevino_
_(Plaintiff's signature)_

_Please continue to the next page._

COMPLAINT _Page 3 of 4_

(4 of 38)



MEMORANDUM OF POINTS AND AUTHORITIES

1. Not all punitive damage awards require physical assault. Some courts and juries have awarded punitive damages for violations of other Constitutional rights based on a showing of "evil intent" by prison officials. One example is Siggers-El v. Barlow, 433 F. Supp. 2d 811 (E.D. Mich. 2006). In that case a prisoner received $200,000 in punitive damages, 19,000 in compensatory damages.

2. The point of punitive damages is to punish members of the prison staff who violate prisoners' rights and to set an example to discourage other prison staff from acting illegally in the future. Therefore, the court usually won't impose punitive damages for one incident. Prisoners will have to show there has been a pattern of abuse or that there is a threat of more abuse in the near future.

3. In the instant case, prison officials actions of intentionally depriving the Plaintiff of ongoing denial of access to the courts, thus violate the 1st and 8th Amendments of the Constitution, to the extent, such pattern of abuse is bad enough to show that they acted with "callous indifference"... as required for punitive damages. And may be enough to make a claim of a "campaign of harassment." Calhoun v. Hargane 312 F. 3d 730 (5th Cir. 2002); Wittle v. Wisconsin Dept. of Corrections, 434 F. 3d 1031 (7th Cir. 2006).

4. Moreover, as specified in the factual allegations, the Defendants in case no. (15-cv-05373) withheld "newly discovery evidence, e.g., (Exhibits 13, 14, and 15) during the discovery process, claiming that it was confidential. See Factual Allegations 11-15, and Claim 6, ~~And Factual Allegations 70-80, and Exhibit 29, which verifies the 1-year SHU.~~

5. To prove officials' action violated the Eighth Amendment, prison officials must act with deliberate indifference to a prison condition that exposes a prisoner to an unreasonable risk of serious harm. Helling v. McKinney 509 U.S. 25, 33 (1993). The Plaintiff was imposed a 1-year SHU, based on a fabricated charge of Calif. Penal Code § 245. (1)(a), and thereafter was subject to harsh conditions, and Defs' disregarded by failing to take reasonable measures to abate it. Farmer, 511 U.S. at 847. See Claim-5. And see Factual Allegations 70-80, and Exhibit 29, which verifies 1 year SHU.

6. When the District Court considers a motion for summary judgment, it is supposed to view the evidence submitted by both sides "in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 160 (1970); See also Curry v. Scott, 249 F. 3d 493, 503 (6th Cir. 2001).

7. However, prison officials cannot avoid discovery of relevant information merely by claiming it is confidential. Beach v. City of Olathe, Kansas, 203 F.R.D. 489 (D. Kan. 2001). See paragraph 4 above. (5 of 38)

## CLAIM-1

### UNIVERSAL DECLARATION OF
### HUMAN RIGHTS : PREABLE

1.     In short -- " Whereas it is essential, if man is not to be compelled to have Recourse ,as a Last Resort, to Rebellion against tyranny and oppresion, that human Rights should be protected by the rule of Law ,.." unquote.

2.     Wherefore, the General Assembly Proclaims This Universal Declaration of Human Rights.

And quoting Article 8 of 30 -- " Everyone has the Right to an effective Remedy by the competent national tribunals for acts violating the fundamental Rights granted him by the constitution or by Law." unquote.

3.     PROSPECTIVE RELIEF
18 U.S.C. § 3626 Appropriate Remedies with Respect to prison conditions
(a) Requirements for Relief.
(1) Prospective Relief.— (A) Prospective Relief in any civil action with Respect to prison conditions shall extend no further than necessary to correct the violation of the Federal Right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective Relief unless the court finds that such Relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the Least intrusive means necessary to correct the violation of the Federal Right. The court shall give substantial weight to any adverse impact on public safety or operation of a criminal justice system caused by the relief. (B) The court shall not order any prospective Relief that Requires or permits a government official to exeed his or her authority under State or Local Law or otherwise violates State or Local Law, unless --

4.     (i) Federal Law Requires such Relief to be ordered in violation of State or Local Law ;(ii) the Relief is necessary to correct the violation of a Federal Right; and (iii) no other Relief will correct the violation of the Federal Right." --.

5.     (C) Nothing in this section shall be construed to authorize the courts, in exerizing their Remedial powers, to order

(6 of 38)

the construction of prisons or the raising of taxes, or to repeal or detract from otherwise applicable limitations on the remedial power of the courts," unquote.

6.    The Plaintiff filed a FRCP 60$^{(b)}$ motion challenging the granting of Defendants' motion for Summary Judgment, where the District Court issued an ORDER on OCTOBER 6, 2017, dismissing the Plaintiffs' Law-suit with prejudice.

7.    Thereafter, the District Court "Amended the Judgment" on November 6, saying in relevant part -- "... The judgment in this case stated the case was dismissed with prejudice; however, the case was dismissed for failure to exhaust. If plaintiff properly and fully exhaust his claims in the inmate grievance system, he may file a new case. The judgment (Docket No. 113) is VACATED and the court will issue a new judgment concurrently with this ORDER." unquote. See Exhibit A which is the "CONCLUSION" (pg. 4, Lines 7-11) of the "Amended Judgment" dated November 6, 2017. And see supporting factual allegations 59-69, involving this issue.

8.    As explained in Factual Allegations 59-69, the Appeals Office Rejected the new 602/Appeal dated Dec. 11, 2017 (Exhibit F-1), and 602/Appeal dated Nov. 21, 2017, (Exhibit G), and was exhausted to the 3rd Level. See Exhibit F-5 dated April 30, 2018, which is the exhausted Level. And see Factual Allegation #67.

9.    Therefore, because the District Court required a new 602/Appeal to be properly exhausted, and the Appeal to be properly exhausted [and the Appeals Office did not complied] as demonstrated in the new 602/Appeals mentioned above, [thus], according to the Fed. R. Civ. P. 60(b) the Judgment was void. See Factual Allegation # 59 ... in terms of obtaining relief.

10.    Therefore, a new § 1983 should be allowed to proceed [permitting equitable tooling], because the prison officials at SAT-F blocked the Plaintiff from having the U.S. Supreme Court address this issue in Case No. 20-5675, as it reflects in [the Plaintiffs' "Petition for Rehearing"], e.g., see pg. 8 dated 11-19-2020, saying in relevant part -- "... This new 602/Appeal that Petitioner filed was cancelled out as untimely by the prison, should the District Court Reinstate the case," unquote. See Exhibit H, which is said Petition for Rehearing.

11.    Thus, the U.S. Supreme Court denied the Petition saying in relevant part that it was Out-of-Time. See Exhibit C, which is a

COURT ORDER from the U.S. Supreme Court, dated Jan. 22, 2021. Wherefore, according to 18 U.S.C. § 3626 (a)(1)(A) (iii), no other relief will correct the violation of the Federal right." unquote... since this was the COURT of Last Resort. Emphasis added throughout.

12.     In further regard, the Plaintiff attempted to resolve the "Amended Judgment" matter, relating to the filing of a new 602/Appeal where Plaintiff filed an "All Writs Act" in the District Court (case no. 15-cv-05373), and was denied. And Lastly he filed a "Writ of CORAM NOBIS" in the Ninth Circuit, Case no. 22-70091, filed on May 04, 2022, and was also denied. See Exhibit 40, which is said Writ of CORAM NOBIS.

13.     See also 18 U.S.C. § 3626, Appropriate Remedies with Respect to Prison Conditions.
(b) Termination of Relief
(3) Limitation -- Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn the least intrusive means to correct the violation." unquote.

14.     In addition, as specified in Factual Allegations # 11-12 and 33, the Plaintiff obtained "newly discovered evidence", which involved Defs' (ISU) T. Ross; S. Newcomb; and P. Cary, whereas, such Defs' in case no. 15-cv-05373, did not produce during the discovery process. For instance, see Exhibits 13 and 14, which are newly discovered items of "medical evidence", which Defs' claimed were confidential. And see Exhibit 15, which is a "Written Record of Additional Documents", dated November 14, 2011, which was obtained via a civil state subpoena... case no. 18-cv-02895. See also Claim 6.

15.     Moreover, during the "Appeal" (case no. 18-15032), in the 9th Circuit, the Plaintiff obtained "newly discovered" evidence pertaining to a "MAIL-CARD" that was procured on 4-13-18, from the MAIL ROOM staff. See Exhibit 31, which is a CDCR 22 Request Form, dated 3-29-2018. To the extent, the "Confidential-Mail" of the 602/Appeal dated Apr. 22, 2012, was at issue during the "summary judgment proceeding." See Exhibit 26, which is the 602/Appeal dated Apr. 22, 2012. And see Exhibit 30, which is the MAIL-CARD, thus, reflecting that said 602 dated April 22, 2012, is not documented therein. For further supporting facts see # 39-44.

CLAIM # 2

1.        Access to the Courts, Under the 1st Amendi...

Prisoners have a fundamental Right to Access and use the court system. This Right is based on the first, fifth and fourteenth Amendments to the Constitution. Under the first Amendment prisoners (the Plaintiff) has the Right to "petition the government for a Redress of grievances".

2.        For example, see Bounds v. Smith, 430 U.S. 817 (1977); Lewis v. Casey, 518 U.S. 343 (1996); Benjamin v. Kerik, 102 F. Supp. 2d 157 (S.D.N.Y. 2000); including, the Supreme Court established that prisoners have a fundamental Right to access the courts. See also Ex parte Hull, 312 U.S. 546 (1941), Johnson V. Avery, 383 U.S. 483 (1969).

3.        In case number, 15-CV-05373-PJH, the District Court found a cognizable claim of "Access to the Courts", on Def. (Appeals Coordinator) E. Medina, as described in the "Factual Allegations", and also prevented the Plaintiff from exhausting his administrative remedies. For instance, he filed a writ of mandate on Oct. 29, 2014, and it was dismissed, as a result of E. Medina's inaction. See Factual Allegations # 41-47, See also Factual Allegation # 39.

4.        In the course of challenging this case no. 15-CV-05373, which occurred at SATF state prison, the Plaintiff was deprived [again] of "ACCESS TO THE COURTS", and was blocked from meeting his dead-line of Dec 4, 2020, in the U.S. Supreme Court (case no. 20-5675), where Prison officials refused to provide the necessary photo copies in order to meet his legal-dead-line of Dec. 4, 2020. Wherefore, the Plaintiff's "petition for rehearing" was returned as OUT-OF-TIME. See Exhibit C, which is an ORDER from the U.S. Supreme Court, case no. 20-5675, and dated Jan. 22, 2021. See Factual Allegations, 70-71.

CLAIM-3

1,      A prisoner may file a federal Civil Rights case for damages only after the conviction, sentence, or disciplinary finding has been declared invalid in a habeas proceeding or other action. The only exception is that a claim involving a <u>parole or disciplinary matter</u> may be brought initially as a federal Civil Rights case if it does not directly challenge "the fact or duration of confinement." Heck v. Humphrey (1994) 512 U.S. 477 [114 S. Ct. 2364; 129 L Ed 2d 383]; Edwards v. Balisok (1997) 520 U.S. [117 S.Ct. 1584; 137 L. Ed 2d 906]; See Muhammad v. Close (2004) 540 U.S. 749 [124 S. Ct 1303; 158 L. Ed 2d 32]; Wilkinson v. Dotso (2005) 544 U.S. 74 [125 S. Ct. 1242, 161, L Ed 2d 253]; Ramirez v. Galaza (9th Cir. 2003) 334 F. 3d 950," unquote,

2.      The constitutional violation [underlied below] is considered a violation of a federal right and also a [violation of State or Local Law, per CALIF. Penal Code §§ 132, 134], because Defendants et al., all contributed to writing a false report [CALIF. Penal Code§ 118.1, and with an intent to cause the Plaintiff a particular degree of harm and acted with a particular state of mind. For instance see 18 U.S. C. §§ 241 and 242. Thus, the Defendant's et.al., conduct violated Rights that were "clearly established" at the time of the incident of 7-15-2011. See Hope v. Pelzer (2002) 536 U.S. 730 [122 S. Ct. 2508; 153 L.Ed 2d 666]; Saucier v. Katz (2001) 533 U.S. 194 [121 S.Ct. 2151; 150 L. Ed 2d 272]. See also 18 U.S.C. § 3626 § (a)(1)(A)(B), See also Claims"4" and "6".

3.      For instance, on or about 7-15-2011, the Defendants' et al, engaged in a piercing and calculated conspiracy, per 18 USC §§ 241; 242, with the intent to falsify a Felony charge (Cal. Penal Code§ 245(a)(1)), in order to misclassify him with an aggravated ADW|SBI, as specified in a CDCR 128G dated 5-7-2012, that was specifically designed for the <u>Board of Parole Hearings</u>(BPH), See Exhibit J, which is said CDCR 128G,

4.      Emphasizing, that on **2-24-2017**, the BPH(Exhibit-M) Plaintiff was denied parole for 5-years; and on **2-8-2022**, he was denied another 5-years. See Exhibit N, which is said Decision. To the extent the Board Commissioners knew or should have known that the Rules Violation Report (RVR) dated 7-15-11, was falsified, being that they (Commissioners) have immediate access to the entire CRIME-INCIDENT Reports,

(10 of 38)

CLAIM-4

1.   Defendants' violated the 14th Amendment, based on the Procedural Due Process Clause and Equal Protection under the Law. See Wolff v. McDonnell, 418 U.S. 539 (1974); and Renchenski v. Williams 622 F 3d 315, 320 (3d Cir 2010), Whereunto, Defendants used a fabricated Rules Violation Report (RVR) dated 7-15-2011, and thereafter was also manufactured into a 128G Classification Chrono on 5-7-2012, [in order to classify him], with an "aggrivated act of violence", and was specifically designed for the next BPT (or BPH) on 2-24-2017, and then on 2-9-2022. See Exhibit J, which is said 128G, dated 5-7-2012.

2.   The Defendants Knew or should have Known that the 128G dated 5-7-2012 (Exhibit J) was erroneous information based on fraudulent reports (California Penal Code §§ 118.1; 132; 134) a felony, which Def. E. Medina had suppressed with callous indifference toward the truth.

3.   This 128G dated 5-7-2012, specifically indicates that Plaintiff was given, quoting -- "12 month aggravated SHU term for RVR of 7-15-11 for assault on I/M with a Weapon and SBI approved as assessed by ICC action of 4-26-2012..." unquote. And the first line states, quoting -- "LIFE Prisoner Status is noted: Next BPT (or BPH) hearing currently scheduled for 03/2016." unquote.

4.   Thus on 3-21-2012 (day of hearing, Exhibit 13), the Defs' E. Medina; B. Hopkins; P. Lord; W. Waterman, deprived the Plaintiff from his "Constitutional Right", to Know the Truth-in-Evidence, Quoting Calif. Const. Art. I § (f)(2) -- quoting "Right to Truth-in-Evidence." Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legis-Lature, relevant evidence shall not be excluded in any criminal proceeding..." unquote. This suppression of evidence also involved Def. T. Ross, and other ISU Defendants.

5.   Therefore, false classification issues should be viewed under "Renchenski V. Williams". For example, only one specific classification matter has been declared sufficient to warrant Due Process protection. In Renchenski v. Williams, state authorities labeled a prisoner a sex offender in the absence of a sex offense conviction. 622 F. 3d 315, 320 (3d Cir. 2010).

6.   Wherefore, in the instant case, the classification issue underscored above [as specified in Exhibit J], thus constitute a

" Liberty interest, whereunto, the BPH Relied on such erroneous information to deny the Plaintiff parole on two (2) occassions [for 10 - years] altogether, which amounts to false imprisonment, without due process of law. See Exhibit M, where the BPH denied parole for 5 years, dated 2-24-2017; And see Exhibit N, where the BPH denied parole for 5-years, dated 2-8-2022.

7          A federal civil Right action must involve a violation of the prisoners federal constitutional or statutory Rights, 28 U.S.C § 1367$^{(a)}$; see, e.g., Hillery v. Rushen (9th Cir 1983) 720 F. 2d 1132. Thus, the Right involved must be protected by a section of the U.S. Constitution or by a federal statute that applies to state prisoners, e.g. see 18 USC § 3626$^{(a)(1)(A)}$.

8          This particular §1983 Complaint portrays correctional officials manipulating the criminal justice system, where defendants develop a callous indifference toward the truth. See generally CAL Rules of Prof.$^{L}$ Conduct. Rules 5-110 (1989), Whereunto, the false RVR by Def. E. Dotson dated 7-15-2011, led to a series of fabricated Reports, which were undersigned by all the High-Ranked Officials, named in this §1983 Civil Rights Complaint. Including the fabricated 128 G. Classification, dated 5-7-2012 (Exhibit J) signed by (CSR Acton) R. Carriedo. Noting that the CSR are Officials from CDC-R - Sacramento,

CLAIM - 5

1. Retaliation under the 1st Amendment of the U.S. Constitution; And under the 8th Amendment, Relating to Deliberate Indifference.

2. Prisoners cannot be put into administrative segregation solely to punish them for filing a Lawsuit. Cleggett v. Pate, 229 F. Supp. 818 (N.D. Ill. 1964); And if retaliatory acts keeps happening it may be enough to make a claim of a "campaign of harassment", Calhoun v. Hargone 312 F. 3d 730 (5th CIR. 2002); Witte v. Wisconsin Dept. of Corr. 434 F. 3d 1031 (7th Cir 2006).

3. Moreove, the Plaintiff cannot be framed of a crime he did not commit and then placed into administrative segregation solely to punish him for filing a Lawsuit. Thus, the ongoing acts of Retaliation also create a "Liberty Interest"; because he was subject to extremely harsh conditions of confinement while in Ad-Seg. For example, he would receive intimidation, and kept-locked in his cell. See Sandin v. Conner, 515 U.S. 472 (1995). Therefore, this type of treatment of a prisoner create a Liberty Interest. See Colon v. Howard, 215 F.3d 227 (2d Cir. 2000).

4. The severity of the conditions matter a Lot. For example, in Palmer v. Richards, 364 F.3d 60 (2d Cir. 2004), the same court held that 77 days under aggravated conditions could be atypical and significant. Gillis v. Litscher, 468 F.3d 495 (7th Cir. 2006). See Exhibit 29, which is a SHU TERM ASSESSMENT WORKSHEET dated 2-11-2012 and 4-26-2012. Moreover, such adverse action also violates the Calif. Penal Code § 147.

5. In 2010, one(1) year before the Plaintiff was frame of Calif. Penal Code § 245(a)(1), on 7-15-2011, while at Salinas Valley State Prison (SVSP), he was pursuing an active case in the U.S. District Court | Los Angeles. See Factual Allegations 70-80. However, he was chilled by prison officials at SVSP from pursuing it, and as a result, the Plaintiff fail to respond to certain court orders. Wherefore, the Defendants' moved with unconstitutional and "malicious intent" and retaliated against him, knowing that his "Litigation activity" was a "protected conduct". Therefore, the Defendants' et. al., are Linked between the adverse action and the constitutional violation.

6. To prove that Defendants, et. al. have illegally retaliated against Plaintiff for filing a Lawsuit, he must show three (3) things,

7.       (1) He was doing something he had a constitutional right to do, which is called "protected conduct". Filing a section 1983 claim or a prison grievance is an example of "protected conduct" as part of his first Amendment rights;

8.       (2) What the prison official(s) did to Plaintiff, which is call an "adverse action", and was so bad that it would stop an "average person" from continuing his lawsuit; and

9.       (3) There is a "causal connection", that means the Defendants et. al., in this case did what they did because of what Plaintiff was doing, or in legal terms the Defendant's adverse action was directly related to the Plaintiff's protected conduct.

CLAIM - 6

1. Under the 14th and 1st Amendments of the U.S. Constitution, the Def.s' (Deputy A.G.) Z. Desta, and (Deputy D.A.) G. Pesenhofer interfered with Plaintiffs ["meaningful."] Access to the Courts, and mislead the District Court during the "Discovery Process, and failed to comply with a state civil subpoena, Respectively. See Facts # 24-37.

Making False Representations and Presenting False Evidence in Court...

2. In this new case,... the Plaintiff is pointing out that Def. Z. Desta filed a misleading motion to "stay discovery" during (case no. 15-cv-05373), knowing that he was pigeon-holding Exhibits 13, 14, and 15 (being Newly Discovered Evidence). See Fact #37. And such "newly discovered evidence" also makes a showing that the "ORIGINAL WRITTEN RECORD OF EVIDENCE"... has not been produced...to this day.

3. Likewise, Def. (Deputy D.A.) G. Pesenhofer filed a three (3) page Declaration attached with the response of the state civil subpoena (case no. 18-cv-02895) indicated under penalty of perjury, that other than Exhibits, 13, 14, and 15 [which is newly discovered evidence, to related case no. 15-cv-05373], he claimed that he did not have any other [items] of evidence to produce. See Facts # 15, 25 and 29.

4. It is unethical for an attorney to mislead or lie to the court. Bus. & Prof. Cond § 6068(d); Cal. Rules of Prof. Cond 5-200(B); D. Sabatino v. State Bar (1980) 27 C 3d 159, 162 CR 458... Note, the Defs' Z. Desta & G. Pesenhofer also knew or should had known that a reputation for honesty is crucial to the effective practice of Law. Therefore, both prosecution and prosecutors must comply with discovery requirements under Cal. Penal Code §§ 1054-1054.8, including the Federal R. Civ. P. that govern discovery, e.g. 56(e) and 26(f), etc.

5. California Lawyers must comply with the standards for professional conduct in the State Bar Act (Bus & Prof Cond §§ 6000-6228), for California State and Federal appellate courts.

6. The California Rules of Professional Conduct are promulgated by the State Bar, and approved by the California Supreme Court. Bus.

& Prof. Cond. § 6076.

7.    The Rules have been used as standard for measuring an attorney's breach of fiduciary duty and that jury instructions based on the Rules may be proper. Mirabito v. Liccardo (1992) 4 CA 4th 41, 5 CR 2d 571.

8.    Accordingly, Defs' (Deputy A.G.) Z. Desta and (Deputy D.A.) G. Pesenhofer filed frivolous and fraudulent motions to stay discovery, and a Declaration (3-pages, dated Dec. 2018, and marked as Exhibit 39) Respectively, to a civil state subpoena (case no. 18-CV-02895), thus in both cases, were signed under penalty of perjury; whereas, constitutes a fraudulent legal document, according to California Penal Code §§ 134-132), because in both cases, they withheld the "Original Written Record." This case factor can be [clearly proven] by the — newly discovered evidence, Exhibit-15 — which is a "Written Record" of Additional Documents, and as it reflects under "Enclosed Photos"... the Photograph of the alleged weapon (Exhibit-12, which is said photo) is NOT documented therein. See Facts #15-16, for other supporting facts.

9                    Fed R Civ P Rule 9
                    Pleading Special Matters
        Rule 9(d) "Official Document or Act. In pleading an official document or official act, it suffices to allege that the document was legally issued or the act legally done." unquote. In this case, the documents, i.e., (motion to stay discovery) and (Def. G. Pesenhofer) declaration attached to the Response of subpoena, were officially filed in the District Court, and Superior Court of Monterey County... being fraudulent.

10        "It is a felony to prepare a false or antedated book, paper, record, instrument in writing, or other matter with the intent that it will be introduced for a fraudulent or deceitful purpose at a trial, or at a legal proceeding or inquiry. Calif. Penal Code § 134. It is also a felony to offer in evidence as genuine or true a forged or fraudulently altered or antedated book, paper, document, record, or other writing." unquote. Calif. Penal Code § 132.

11        "Thus, prosecuting attorneys cannot mislead the court (see Bus. & Prof. Cond § 6068(d); Calif. Prof. Cond 5-200(B).

12        The "Original Written Record" of Evidence, that the Plaintiff is seeking should have been produced by both Defs' Z. Desta and G. Pesenhofer, and Lastly by Def. G. Pesenhofer, according to Evidence Code § 1530-1532, including

Fed. R. Civ. P. 56$^{(e)}$ and 26$^{(f)}$ etc.

13          " A subpoena duces tecum of business is governed by Evidence Code §§ 1550-1566. See 2 Jefferson's California Evidence Benchbook §§ 4.1-4.4 (3d ed C JA-CEB 1997); Effective Introduction of Evidence in California, chap.15 (2d ed (al. CEB 2000) Production of official writing is governed by Evidence Code §§ 1530-1532. See 2 Evidence Benchbook §§ 5.1-5.4 ; Effective Introduction of Evidence, unquote.

14          Fed. R. Evid § 403

          "The standard under Fed R Evid § 403 is not whether evidence is prejudical, but rather whether evidence's probative value is substantially out-weighed by danger of unfair prejudice. Batz v. AM Commer. See Servs (2011 C.D. Cal) 776. F. Supp 1087, unquote.

15.          California Constitution Art. 1§28$^{(f)}$(2)

          "Right to Truth-in-Evidence. Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the legislature, relevant evidence shall not be excluded in any any proceeding..." unquote.

16.          This Art. 1 §28$^{(f)}$(2) also applies to disciplinary proceedings, where Plaintiff was wrongly convicted of Calif. Penal Code § 245$^{(a)}$(1), on 3-21-2012 (Exhibit 18), To the extent [such act of violence, as classified in Exhibit J] would have a prejudical impact on Plaintiffs' parole hearings or surtibility hearings of 2-24-2017 and 2-8-2022... respectively...

17.          For example, see Exhibit N, which is the BPH decision report dated Feb. 8, 2022, i.e., the Plaintiff had 11-years where he had NOT received any "violent write-ups", emphasis added, and incidently qualified for the "Elderly Parole Program". However, the Board Commissioners (BPH) revoked it, where acts of violence were stressed as a factor being implemented to deny plaintiffs' parole for 5-years. Quoting Exhibit N, under; Hearing Comments -- "This person qualifies for the Elderly Parole Program and special consideration must be given to elderly inmate factors that may reduce their risk for violence"... unquote

18          " Weight Interest, Mc Curthy v. Madigan, 503 U.S. 140, 146, 112 S. Ct. 1081, 117 L. Ed 2d 291 (1992) court must balance individual interest against institutional interest)" unquote...

19.   " In determining admissibility of evidence under Federal Rules of Evidence 403, Court must balance several factors, including (a) time necessary for presenting and potential for delay (b) how directly evidence tends to prove facts in support of which it is offered (c) whether evidence would be needless presentation of cumulative evidence (e) how important or trivial fact sought to be proved is (f) potential for confusion of issues or misleading jury (g) whether facts sought to be proved in another way involving fewer harmful effects." People v. Oliphant (1976) 399 Mich 472, 250 NW 2d 443. unquote....

FACTUAL ALLEGATIONS

1. The alleged incident being Litigated Involves an "one on one "fist fight" that occurred on 7-15-2011 at 0725 hours in front of 1-Block, where the Plaintiff allegedly slashed Inmate SANCHEZ # AE-1398, and falsely charged for Assault with a Deadly Weapon (ADW), to Commit Serious Bodily Injury (SBI), violation of CCR Title 15 § 3005$^{(d)(1)}$, and/or California Penal Code § 245$^{(a)(1)}$. See Exhibit 1, which is the RVR (Rules Violation Report) dated 7-15-2011, Log no. A 11-07-0052; And written by Defendant $^{(e/o)}$ E. Dotson, and undersigned by Defendant (Senior Hearing Officer) B. Hopkins, Defendant (Captain (A)) V. Solis; Defendant (Chief Disciplinary Officer) B. Hedrick, See Exhibit 1 (RVR) under PLEA: "Inmate TREVINO pled not guilty to the charges against him." Unquote.

2. Noting, the following defendants of this case, i.e., the higher Ranked officials wrote CRIME INCIDENT REPORTS PART C1-SUPPLE-MENT (Exhibit 2); CRIME/INCIDENT REPORT PART A1-SUPPLEMENT CDCR 837-A1, Log No. SVSP-FAY-11-D7-0604, dated 7-15-2011, and Incident Time 07:25. (Exhibit 3), which were Def.(Lt.) J. Stevenson, e.g. See Exhibit 11, which is a PART B1-INMATE, CDCR 837-B1, page 4 of 8, which describes injuries of Sanchez, # AE-1398, and TREVINO #T-64367; And Def. (Captain) V. Solis; Def. (Captain) RE Binkele; Def. (Chief DO) Def. B. Hedrick; and (Sgt.) Def. D. Ambriz, all wrote CRIME INCIDENT REPORTS, or undersigned them, see Exhibits 1, 2, and 3, for verification. Whereas, these Defendants Knew, or should have Known that the alleged CRIME-SCENE that was processed by Defendant D. Vega, did NOT support such "slashing allegation." For instance, the absence of any photos of "blood evidence" at the CRIME-SCENE, or any blood traces on the alleged weapon (Exhibit 12), thus reflect the falsity of the fabricated charge.

3. Therefore, these higher Ranked officials (including Def. D. Ambriz, had an ethical (professional conduct) responsibility to expose and correct such unlawful act of fabricating evidence and Reports, and therefore violated California Penal Code §§ 118.1; 132; 134, a felony. But instead these Defendants acted with malice, and willfully conspired to frame and persecute the Plaintiff under color of state law, and consequently are Linked between the adverse action and the constitutional violation, and confirming the Defendant's written reports as genuine, by their signatures,

4. Defendant E. Dotsons (RVR) dated 7-15-11, (Exhibit-1), substantially contradicts all of the Responding Defendants' et.al written CRIME / INCIDENT REPORTS. For instance, Defendant (C/o) E. Dotson alleged that he observed that Plaintiff was "making motions that appeared to either stabbing or slashing toward Inmate SANCHEZ, CDC # AE-1398, unquote.

5. On the contrary, Defendants (Sgt.) D. Ambriz; D. Anguiano; M. Perez; G. Collier; E. Elias; S. Milenewicz, and D. Vega, did NOT mention anything [whatsoever] about stabbing or slashing motions, but rather "fighting back and forth" "striking with clenched fist" [bold emphasis added] ... For instance, see Exhibits - 2; 5; 10; 8; 6; 7; and 4 respectively. Therefore, these Defendants knew that they were fabricating an unsupported incident (based on their own observation) relating to a "slashing incident", because they specified the charge of "Assault with a Deadly Weapon (ADW) to commit Serious Bodily Injury (SBI), in their CRIME/ INCIDENT REPORT, as it reflects in Exhibits 2; 5; 10; 8; 6; 7; and 4.

6. Wherefore, because of the piercing and calcu-lated conspiracy, that resulted to being wrongly convicted, and thereafter the Plaintiff was imposed an unjustifiable — one (1) year SHU Term — on 2-11-12. See Exhibit 29, which is a SHU TERM ASSESSMENT WORKSHEET, and emphasizing [as noted in a 128G] that such (ADW)-(SBI) was classified as an aggravated act of violence for SHU TERM for RVR of 7-15-11" unquote. See Exhibit J, which is a Classification Committee Chrono, 128G dated 5-7-2012. And also indicates in said "Chrono" that it was designed for the very purpose of having the BPH deny Plaintiff's parole, quoting-- " LIFE PRISONER STATUS, is noted Next BPH hearing is currently scheduled for 03/2016," unquote. And creates a Liberty interest, under Sandin V Conner 515 U.S. 472 (1995).

7. " Not all punitive damage awards require physical assault. Some courts and juries have awarded punitive damages for violations of other Constitutional Rights based on a showing of "evil intent" by prison officials. One example is Siggers-EL v. Barlow, 433 F. Supp. 2d 811 (E.D. Mich. 2006). In that case a prisoner received $200,000 in punitive damages, 19,000 in compensatory damages." unquote.

8. In any event, C/o E. Dotson alleges as follows: "... At the scene, I noticed a toothbrush on the ground that had a RAZOR blade melted into the handle, at the end of the toothbrush. Sergeant D. Ambriz instructed Correctional Officer D. Vega, to collect the toothbrush for evidence. (See Exhibit-1). It should be noted, that C/o E. Dotson, did NOT specify in his RVR, that he had observed "cuts" on Inmate SANCHEZ' face or any blood squirting or exiting from his multiple injuries, according to the LVN (Defendant C. Sevier') 7219 medical report, dated 7-15-2011, (Exhibit 17). These CRIME/SCENE factors would had been a madatory occurrence which would had resulted (a blood trail) as a consequence of the action, i.e., the slashing motions toward Inmate SANCHES, as asserted by Defendant E. Dotson.

9. However, based on Information and Belief, Def. D. Ambriz persuaded (LVN) Def. C. Sevier to falsify the CDCR-7219 Medical Report, indicating he (Inmate SANCHEZ) was slashed four (4) times, See Exhibit 17, which is Inmate SANCHEZ' medical report, dated 7-15-2011.

10. In any case, it should be noted that Def. (Sgt.) D. Ambriz was NOT in a position to direct Defendant D. Vega (Exhibit 4) to process the crime-scene, collect evidence, and take photographs. According to Law enforcement protocal, Investigations Service Unit (ISU) Def. T. Ross; S. Newcomb; and D. Cary were required to process the crime/scene and photograph any and all "blood evidence" at the crime/scene, and essentially take photographs of all injuries. Accordingly it is clear, that Def. (Sgt.) D. Ambriz directed CDCR Employees to do wrong things in order to stage the crime scene of 7-15-2011, and falsify medical evidence. For example see (ISU) Role as specified by the SHO in Hearing Report (Exhibit 18) under subd. "D."

11. The Defendants in case no. (15-CV-05373) knew that Defendants T. Ross; S. Newcomb; and (ISU) Sgt. D. Cary played major roles in the Investigation of this case [behind the scenes] at Salinas Valley State Prison (SVSP), see Exhibit 13, which is an ISU Memorandum dated Nov. 7, 2011. Therefore, during the discovery process (case no. 15-CV-05373), the defendant's Counsel refused to produce documents bearing their names. To the extent def's Counsel stated in a "Discovery Inquiry" that it was not his Responsibility to supply their names to the Plaintiff.

12. However, defendants (case no. 15-CV-05373)

(21 of 38)

did produce one(1) document pertaining to Investigations Service Unit "(ISU)" with a name of an ISU official that looked exactly like Doss. See Exhibit 20, which is a CDCR 128 B, indicating the case was rejected by the DA's Office and above "ISU" STAFF, the signature of *Doss* appears therein, and dated 1-7-2012. Noting that this signature does not look anything like "ROSS". Wherefore, the Plaintiff submitted the name DOSS as a defendant, and the District Court was in the process (by Plaintiff's request) to submit a civil subpoena for the correct name, but it didn't happen. Therefore, Def. (Deputy A.G) Z. Desta, is Liable for punitive damages, for concealing his name & other documents.

13    Moreover, the Plaintiff obtained newly discovered evidence in the Superior Court (case no. 18-CV-02895), which the defendants in (case no. 15-CV-05373) failed to produce during the discovery process, claiming it was confidential, which substantially limited him from developing factual allegations of the case, and also precluded him from serving the §1983 Complaint on other ISU officials, such as ISU, S. Newcomb (Security Squad Officer #3); and ISU (Sergeant) D. Cary. See Exhibit 13, which is a MEMORANDUM, dated November 7, 2011, To: T. Ross ; Court Liaison Officer, and indicates, "Subject: FOLLOW UP INTERVIEW REQUEST REGARDING INCIDENT LOG NUMBER SVSP-FAY-11-07-0604", unquote, Therefore, Def. (Deputy Attorney General) Z. Desta is Liable for punitive damages...

14    In this MEMO dated Nov. 7, 2011 (Exhibit 13), It is clear that ISU T. Ross was directed by the "Higher Ranked" officials, e.g., (Def. J. Stevenson, and others) including ISU D. Cary (Sgt.) to coerce Inmate SANCHEZ to take the stand and testify against Plaintiff for a crime he did not commit, i.e., Calif. Penal Code 245.(a)(1), as it clearly reflects in said MEMO, Thus, defrauding government offices, which constitutes Judicial fraud (and RICO allegations) if the defendants had prevailed in convicting Plaintiff in a Court of Law.

15.    Furthermore, in order for ISU T. Ross to prevail to frame the Plaintiff, in the Court of Law - criminal justice system - T. Ross (Investigations Service Unit) was also relieing on coercing Inmate SANCHEZ to sign a "MEDICAL RECORDS-RELEASE & WAIVER", And indicates in part " This Release waiver pertains to the injuries sustained during an alleged inmate attack on Angel Sanchez at Salinas Valley State Prison.

DOB; 7-15-2011, The incident occurred on July 15, 2011 at the Salinas Valley State Prison. Therefore, all medical records information may be released to the Monterey County District Attorney's Office as long as the medical record information is specific to and relating only to injuries and treatment as a result of this incident and after care of same," unquote. See Exhibit 14, which is said Medical Records-Release & Waiver, dated Nov. 7, 2011. However, Inmate SANCHEZ refused to sign the medical form, which bears Def. S. Newcomb as a witness to Inmate SANCHEZ Not signing.

16.  This Medical Records release & Waiver (Exhibit 14) is also newly discovered evidence, that Plaintiff obtained in the State Superior Court (case no. 18-CV-02895). Including Exhibit 15, which is a "Written Record" of ADDITION DOCUMENTS, and dated Nov. 14, 2011, relating to -- quoting "IR# SVSP-FAY-11-07-0604 Assault on an Inmate with a Weapon," unquote. And the VICTIM: I/M Sanchez, Angel (AE 1398)". And noting in this Written Record, under "Photos Enclosed", the alleged weapon (Exhibit 12, the photo of said weapon) is not noted therein. Therefore, it is clear, that this newly discovery evidence, thus clearly verifies that the Defendants, and the D.A's office is pigeon holding the original written record, that would/shows the alleged weapon, i.e., **the photo** of the alleged weapon, and other items of evidence therein.

17.  Noting, that the Medical Record-Release & Waiver (Exhibit-14) specifically indicates, quoting "... information is specific to and relating only to injuries ..." In any case the CDCR 7219 Medical Report (Exhibit 17) entitled "MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE," does NOT reflect any noted injuries that were actually treated. Thus, Def.(LVN) C. Sevier noted four #"9's", which are, cut/laceration|slash. However, under INJURIES FOUND #2, is not checked or noted, which indicates "Active Bleeding", and under "other", numbers 17, 18 and 19 (which are empty spaces for notes), no stitches is noted, or any other treatment that followed. Emphasis mine added throughout. See Exhibit 17, which is I/M SANCHEZ' CDCR 7219 Medical Report dated 7-15-2011.

18.  In further regard, it should be noted that I/M SANCHEZ was in Ad Seg (the hole) on an unrelated incident. And after I/M SANCHEZ was interviewed by ISU Def. S. Newcomb, thus I/M SANCHEZ

wrote a Declaration and sent it to Plaintiff, and stated that he had told (IGI) meaning (ISU), that he had told ISU, Def. S. Newcomb, that he would not be willing to take the stand and testify against Plaintiff. See Exhibit 16, which is Inmate SANCHEZ' Declaration, (AKA) TRUSTY.

19.    It should be noted for the Record, that because of an inadequate I.E. Investigation, the Disciplinary Hearing of 2-10-2012 was postponed. See Exhibit 37, which is a MEMO dated Feb. 16, 2012. On the contrary, the Hearing Report, dated 3-21-2012, top line, indicates, "Any Post-ponement Explained: None..." unquote, which is false. The Reason was that I.E. P. Lord had NOT questioned the Plaintiffs witnesses, i.e., A. SANCHEZ and TREVINO. See Exhibit 22, which is a list of brief questions for the Witnesses, and to the I.E.

20.    And I.E. W. Waterman also failed to question the witnesses and document their answers in his I.E. Report. For instance, see Exhibit 23, which is Def. W. Waterman's I.E. Report, dated 2-21-2012, quoting "... It is noted that the initial assignment of this investigative Report was by correct-ional officer P. Lord and was incomplete." unquote. Therefore, both I.E. Reports were incomplete.

21    In addition, the MEMO dated 2-16-2012 (Exhibit 37) falsely claims that the delay [OR Reason] the "Hearing" did not proceed on 2-10-2012, was because the Plaintiff had Refused the assignment of an (I.E.). This matter is clarified in a CDCR 22 Request form that Plaintiff submitted on 2-8-2012, and how they were Reassigning I.E. on their own initiative, without Plaintiff Knowing about it. See Exhibit 25, which is a 22 FORM - Request for Interview, dated 2-8-2012, And see Exhibit 24, which is a CDCR 115-A, dated 7-24-2011 and 1-15-2012, which verifies that Plaintiff did not waive any I.E... Emphasis added.

22    It should be noted for the procedural history of the case, all these underlying factors Revealed above were carefully orchestrated behind the scenes, so that the prolonged investigations of multiple I.E's (Investigative Employees) would go beyond the "Time Constraints", and therefore, the SHO (Senior Hearing Officer) could NOT impose the Loss of "good time credits". Because, the SHO knew [that] if Plaintiff fil[ed] a Federal Habeas on this matter, the Federal Court would dismiss the case, since, the Plaintiff did NOT Loose any "good time credits." Subsequently a Federal habeas was filed

by Plaintiff, (case no. 15-CV-04837), and said Federal habeas was dismissed for this specific reason underlied above... because he did not loss good time credits.

23    In any case, Def. (SHO) B. Hopkins claims in subd. "D" of said Hearing Report dated 3-21-2012 (Exhibit 18), that Plaintiff -- quoting "... reviewed the CRIME INCIDENT photographs during the I.E. process, which included photographs of Inmate SANCHEZ' injuries. The fingerprints testing and findings on the weapon conducted by ISU and any and all reports ISU sent to the DA regarding evidence in question, was information not utilized by the SHO, nor has it been made available as the DA declined to prosecute this matter," unquote. See Exhibit 18, which is the Hearing Report, dated 3-21-2012.

24    The SHO made it clear in his Hearing Report (Exhibit 18) under FINDINGS, that Plaintiff was convicted of "Assault with a Deadly Weapon (ADW) to Commit Serious Bodily Injury (SBI), without the evidence being presented at the disciplinary hearing of 3-21-2012. To the extent, the Plaintiff's witnesses — SANCHEZ and TREVINO — were requested for his hearing, but the SHO did NOT allow [especially] I/M SANCHEZ to testify. See Exhibit 18 (2nd page of Hearing Report, on the top line, quoting -- " Inmate TREVINO requested the presence of Inmate TREVINO and SANCHEZ as witnesses. Inmate SANCHEZ is currently housed in Ad/Seg and his presence could present a safety and security issue", unquote. Moreover, I/M SANCHEZ was not allowed to testify per "phone speaker" as well. See Fact # 17, above, quoting I/M SANCHEZ' Declaration.

25    It is clear, [because] Def. (SHO) B. Hopkins was grossly engaged in a calculated, piercing and striking conspiracy [with the other Defendants' et. al.,] to convict the Plaintiff [under color of state Law], he refused to allow I/M SANCHEZ to testify, and put his testimony on record, at his hearing on 3-21-2012, in order to secure a conviction without the evidence, [i.e., photos of I/M SANCHEZ' injuries and fingerprint evidence on the alleged weapon] as the SHO claimed that ISU Defs' T. Ross, S. Newcomb, and ISU (Sgt.) D. Cary, forwarded to the D.A.'s office specified in subd "D" of said Hearing Report, Exhibit 18.

26    Wherefore, as quoted above in (fact # 22) of subd. "D" of Hearing Report, the SHO made it appear [or sound] as if the DA's office was in "custody and in control" of the evidence (as specified above)

which was the reason the **SHO** gave, as to why he did not present the evidence at the Hearing of 3-21-2012. In any case, this claim by the **SHO** can be rebutted by the Deputy D.A. Glenn Pesenhofer, [Def.] To the extent, during case no. (15-CV-05373) District Court / Oakland, the Plaintiff submitted "proof of service" of a civil subpoena to the Monterey County District Attorney's Office (which was NOT issued by the Court). Thus on July 7, 2017, the Deputy D.A. G. Pesenhofer [Def.] indicated as follows, quoting -- "Re Subpoena mailed on or about June 26, 2017; I have reviewed our records of this incident. We do not possess any fingerprint evidence or any photographic evidence of injuries from the incident, thus we have no information to provide you pursuant to the subpoena." unquote. See Exhibit 19, which is a letter from Deputy D.A. G. Pesenhofer, dated July 7, 2017.

27      [I]f any concept is fundamental to the American system of justice, it is that those charged with upholding the Law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit." Limone v. Condon, 372 F. 3d 39, 44-45 (1st Cir. 2004).

28.      Conspiring to fabricate and forward to prosecutors a known false confession" violates an accused's clearly established constitutional rights, and no reasonably competent police officer could believe otherwise"); Johnson v. Contra Costa County, No. C-07-0195, 2007 WL 1287879, at *1 (Northern Dist. Cal. Apr. 30, 2007)

29      Wherefore, Def. (Deputy A.G.) Z. Desta and Def. (Deputy D.A.) G. Pesenhofer are both liable for punitive damages for intentionally failing to produce non confidential documents, which were demonstrated in "Facts 12-15", whereas Plaintiff links them between the adverse action and the constitutional violation. See Claim 6.

30      In addition, the Clerk of the Superior Court issued a state civil subpoena in (case no. 18-CV-02895) after Def. G. Pesenhofer wrote his Letter of July 7, 2017 (Exhibit 19). Plaintiff, specifically requested the "Original Written Record" of the incident dated 7-15-2011, which the SHO claimed was forwarded to the D.A.'s office. Instead, Def. G. Pesenhofer sent other items of "Newly Discovered Evidence (Exhibits 13, 14, and 15), and attached a 3-page Declaration, saying that he did NOT have any other evidence to provide. Therefore, to this day, the "ORIGINAL WRITTEN RECORD" has not been produced, Subsequently,

Def. G. Pesenhofer intentionally failed to comply with the process.

CIVIL CONTEMPT
Code of Civil Procedure § 1209(a)

31      4. Abuse of the court process or proceedings, or falsely pretending to act under authority of an order or process of the court;

32      A judicial determination must first be made that the party who subpoenaed the records is entitled to receive them. People v. Hammon (1997) 15 C 4th 1117, 65 CR 2d 1; People v. Blair (1979) 25 C 3d 640, 159 CR 818. See Evidence Code § 1560... A subpoena duces tecum, which requires specified evidence to be produced in court, California Penal Code § 1327; CCP § 1985.

33      A subpoena duces tecum of business records is governed by Evidence Code §§ 1550-1568. See 2 Jefferson's California Evidence Benchbook §§ 4.1-4.4 (3d ed CJA-CEB 1997); Effective Introduction of Evidence in California, chap 15 (2d ed Cal CEB 2000). Production of official writings is governed by Evidence Code §§ 1530-1532. See 2 Evidence Benchbook §§ 5.1-5.4; Effective Introduction of Evidence.

34      Likewise, Def. (Deputy A G) Z. Desta failed to produce any of the Newly discovered Evidence (as mentioned in Facts# 11-12) and/or documents that reflected ISU T. Ross' name, during the "discovery process" of case no. 15-CV-05373. Moreover, Newly discovered Evidence, also reflects that "process of service" should have been served on ISU Def. S. Newcomb and ISU (Sgt.) D. Cary. See Newly Discovered Evidence, Exhibit 13, which is a follow-up interview with I/M SANCHEZ, dated Nov. 7, 2011.

35      The District Court stated in the "process of service" dated 9-22-2016" (Exhibit 38, page 7, Line 14) to provide all Records of incident reports. Def. (Deputy A G) Z. Desta intentionally failed to comply to produce documents which were discoverable, during the discovery process. This particular noncompliance to the COURT ORDER ~~Rule of Fed R Civ P~~, did prejudiced the Plaintiff's case substantially. This deliberate failure to provide the pertinent documents during discovery, thus constitutes "civil contempt", where he was deprived from serving "[process]" on ISU T. Ross and other ISU Defendants (which was Def. Z. Desta legal obligation to reveal

and produce), and was also prejudiced where he was precluded from developing crucial facts and different aspects of the presumed conspiracy, which removed the Plaintiff from his crucial defense.

36    CIVIL CONTEMPT
Code of Civil Procedure § 1209 (a)
   5. Disobedience of any lawful judgment, order, or process of the court;

37   Destruction, alteration, or concealment of evidence may be a crime, as well as the basis for attorney discipline. California Penal Code §§ 134-135 ; Price V. State Bar (1982) 30 C 3d 537, 179 C R 914. In addition, attorneys are prohibited from suppressing evidence that the attorney or client has a legal obligation to reveal or produce. Cal. Rules of Prof. Cond. 5-220.

38   Moreover, during the case (15-cv-05373) the Def. (Deputy A.G.) Z. Desta did mislead the District Court, and entered a Motion to "stay discovery", thus claiming that he had produced all "discoverable evidence". However, that was not the case, because since then through a Superior Court (case no. 18-cv-02895) Plaintiff obtained "newly discovery evidence" (see Exhibits, 13, 14, and 15, and see, Facts 11-12). In addition, the newly discovered evidence, thus establishes that the prison (SVSP) Salinas Valley State Prison and Def. (Deputy D.A.) G. Pesenhofer are pigeon-holding the "ORIGINAL WRITTEN RECORD OF EVIDENCE."

39   In Retrospect, Def. Investigative Employees (I.E.') P. Lord and W. Waterman are liable for punitive damages, because, they were in concerted agreement to conform the facts of their I.E. Reports with the other Defendants et. al., written reports, and specifically with Def. (SHO) B. Hopkin's Hearing Report (Exhibit 18) under subd. "D" dated 3-21-2012. Noting, that all these "case factors" should had been reviewed by Def. (Appeal Coordinator) E. Medina, to the extent, the fabricated charge — Assault with a Deadly Weapon (ADW) to commit Serious Bodily Injury (SBI) — may have been dismissed at face value, where the conspiracy to deprive, of constitutional rights, and the "disciplinary frame-up" was irrefutable. Therefore, the Plaintiffs' 602/Appeal (Exhibit 26) dated Apr. 27, 2012, was intentionally lost, even though it was forwarded to the Appeal Office as "confidential mail's" per CCR Title 15 §3141(c)(2).

40   In any rate, Def. (Appeals Coordinator) E. Medina claimed that his 602/Appeal dated Apr. 22, 2012 [which was timely] was not received by his office. Whatever the case was? Def. E. Medina should had received the "Confidential

(28 of 38)

mail "[and this inaction to process it] and other acts of deprivation amounted to deprivation of meaningful "Access to the Courts", in case no. HC 8340 in the Superior Court of Monterey County, and in his Federal HC, case no. 15-CV-04837. And in pursant of this case [15-CV-05373], at the U.S. Supreme Court (case no. 20-5675), an ongoing "Access of the Courts" occured which consitutes a violation of a Federal Right, per 18- USC §3626 (b)(1)(A).

41.    Quoting from Exhibit 27, which is a 22 REQUEST FORM, dated 8-1-2012 -- " TREVINO - I was not in Appeals from 3/1/12 to 7/4/12. However a review of the data base indicates no receipt of an RVR appeal from you. I process all incoming appeals w/in 1 business day. If you submitted an Appeal, you should receive an assignment notice or the appeal back within a week. If not you should be writing to me for a status." unquote. See Exhibit 27, under SECTION B, STAFF RESPONSE.

42    According to CDCR policy and procedure, Def. (Appeals Coordinator) E. Medina's Response, it is not [very likely] that a large 13 x 15' manilla envelope, with about 40 pages of "writen reports" could had fell out of the "mail-bag", unless it was done on purpose, For instance, the procedure or steps are as follows. In any rate, around 10:00 pm a prison guard picks up the mail at the cell-door, which has a window. (1) The Plaintiff shows him that it's addressed to the "Appeals Office" as Confidential Mail"; (2) The Plaintiff takes out the contents and shakes it, and shows it to the prison guard through the window. (3) The Plaintiff seals the manilla envelope and hands the envelope to the prison guard, through the crack of the door, and he signs his name on the back of the envelope and also dates in on the edge of the flap that glues to the envelope. (4) Thereafter, the prison guard shows the "signature and date" to the Plaintiff so that he may verify the date. (5) The Prison guard places the envelope in a large-heavy-duty red mail-bag which is about 2 3/4 feet deep, and secures it with an "over-flap" that covers the opening of the mail-bag. (6) And ...

43    (6) And after all these security measures, the prison guard walks the mail-bag to the "Mail Room", and thereafter, the Mail-Room Staff Logs it in as "confidential mail", in a Mail card, known as a ( CDC FORM 189), see Exhibit 30.

44    If the prison guard follows all the steps outlined above — it is NOT likely — that a 13' x 15' manilla envelope with approx. 40 documents could accidently become lost, from point A to point B.

45    Thus, the Plaintiff had the right to send said " confidential mail" to the Appeals Office, according to CCR Title 15 § 3141(a) - " confidential correspondence is a right guaranteed by Law." unquote. Authority cited: Penal Code § 5054,

5058, and 2600. And In re Jordan, 12 CA 3d 575 (1974); and King v. Borg, USDC-ED, case no. CIV-S-87-0519 LKK/PAN/P.

46    In any case, the Plaintiff did not receive a timely response from the "APPEALS OFFICE", i.e. Def. E. Medina, and on 6-3-2012, he submitted a CDCR 22 REQUEST FORM, inquiring about his 602/Appeal prison grievance, dated 4-22-2012, but was not answered. See Exhibit 27, which makes this inquiry.

47    Thereafter, on Aug. 1, 2012, the Plaintiff submitted another CDCR 22 REQUEST FORM to the Appeals Office, stating that he had submitted a CDC 22 REQUEST FORM on 6-3-2012, requesting a "[status Update]. See Fact #40, for Def. (Appeals Coordinator) E. Medina, Exhibit 27, under SECTION B: STAFF RESPONSE.

48    On Aug. 14, 2012, the Plaintiff submitted another 602/Appeal prison grievance on his unanswered 602/Appeal dated Apr. 22, 2012, and addressing the inadequate I.E. investigation, etc. etc. However, the Appeals Office did not respond. See Exhibit 28, (2-pages) which is a hand-written copy of said 602/Appeal dated Aug. 14, 2012.

49    In any event, the Plaintiff submitted a CDCR 22 REQUEST FORM to the "MAIL-ROOM" on 3-29-2018, requesting verification of his "confidential" Mail" he sent out to the APPEALS OFFICE on Apr. 22, 2012, and they sent him a "MAIL-CARD" (CDC FORM 119) of "Outgoing Mail", the only "CONFIDENTIAL MAIL" thats logged therein, is to the FBI, on 12-2-2014. However, the confidential mail to the "APPEALS OFFICE" should have been logged in said MAIL CARD after the date 1-25-2012. See Exhibit-30, which is the CDC MAIL-CARD FORM 119. Noting that the MAIL-CARD was considered "Newly Discovered Evidence" during the 9th Circuit proceeding (case no. 18-15032). However, the Plaintiff's "Pro Bono" Attorney refused to raise the issue in her "briefing."

50    The MAIL-ROOM employee "Benavides" responded on 4-13-2018, and stated as follows --" see attached OUT going Log ALL April 2012, if it is not on the Log then mail Room never received mail to Log out." unquote. See Exhibit 31, which is said 22 REQUEST FORM, under SECTION D: SUPERVISORS REVIEW, dated 4-13-2018.

51    Because the Appeals Coordinators', Def. E. Medina; K. Kelroy, and (Staff Service Analyst) C. Martella did not process the "Guilt finding" of the "Assault with a Deadly Weapon (ADW) to Commit Serious Bodily Injury

(SBI), and didn't returned his written reports dated 7-15-2011, the Plaintiff started making [verbal Request] for an —OLSON REVIEW— in order to obtain the pertinent CRIME INCIDENT Reports dated 7-15-2011. However, on several occasions, CCI, state Employees would say that an OLSON-REVIEW was being scheduled, but they wouldn't carry it out. Noting that such "written reports" were needed to initiate [Legal filings] And Defs' [Appeals Coordinators] mentioned above, and their inaction deprived Plaintiff of "Access to the Courts."

52   On Oct. 29, 2014, the Plaintiff submitted a Writ of Mandate (case no. HC-8340) in the Superior Court of Monterey County, and informed the Court that the Appeals Coordinators failed to process his 602/Appeal dated Apr. 22, 2012, and also did not return his "written reports." The Superior Court converted his "admistrative mandamus," CCP §1094.5, into a Habeas Corpus Petition, and denied it for failing to exhaust administrative remedies...

53   Finally, the Plaintiff started submitting CDCR 22 REQUEST FORMS, specifically to Def. (CCI) Rueda, attempting to have an "OLSON REVIEW" in order to obtain his CRIME INCIDENT Reports dated 7-15-2011, For instance see Exhibit 32, which is a 22 Request form dated 11-23-2014, addressed to CCI (Def.) Rueda requesting an OLSON-REVIEW. Thus, Def. (CCI) Rueda stated verbally to Plaintiff, he would schedule him for an OLSON REVIEW...as soon as possible. However, another substantial delay preceded before he obtained an OLSON REVIEW...until 6-25-2015. See Exhibit 33, which is a CDCR 22 REQUEST FORM by D. Garcia, dated 6-25-2015, under, SECTION B: STAFF RESPONSE, quoting "I will order your OLSON REVIEW DISK today (6/25/2015) unquote. Noting that Plaintiff began making verbal Requests for an OLSON REVIEW as earliest as August/2012...

54.   On Jan. 6, 2015, the Plaintiff submitted another CDCR 22 REQUEST FORM, saying specifically to Def. (CCI) Rueda, quoting --"Please take notice, the CRIME/INCIDENT Report (CCI Rueda) you gave me today was unreadable (it appeared to be a FAX-copy) and not "Photo-copy" and it was under lined with "black markings," Some Narratives were incomplete, e.g., VEGA'S PART C1... The 7219's JANCHEZ'S or mine were not in the "Incident-Package"! Also there's another Incident-Report-8 pages of 8 that is missing, and also the 115 Report and the Hearing Report from the (SHO) was also missing. I'm Requesting a better copy if possible, and the missing parts. I would Also Request to be scheduled for an OLSON REVIEW..." unquote. See Exhibit 34, which is the 22 form, dated 1-6-15.

55.   Immediately, hereinafter, the Plaintiff filed

a motion for "Reconderation" in [case no. HC-8340] in the Superior Court (Monterey Branch), and forwarded the incomplete portions of the CRIME INCIDENT Reports. The Superior Court denied the motion. In short, the Court indicated the RVR (Rules Violation Report) dated 7-15-2011 (or the 115) was not included and the facts could not be adjudicated...

56      Lastly, on Dec. 8, 2014, the Plaintiff submitted a 602/Appeal on Def. (CCI) Rueda, saying that he ("Plaintiff") had submitted another CDCR-22 REQUEST FORM in Sept/2014, requesting an OLSON REVIEW, but that Def. (CCI) Rueda claimed that he had not received. And Plaintiff renewed his request for an OLSON REVIEW. See Exhibit 35, which is a 602/Appeal prison grievance, Log no. SVSP-14-05827, and dated Dec. 8, 2014...

57      Noting, that the Defs' (Appeals Coordinators, and Analyst) E. Medina; K. McKelroy; and C. Martella — in regards to the 602/Appeal Log no. SVSP-14-05827 — which bears their names therein, thus rejected the appeal, which was their way to keep the [CRIME INCIDENT REPORT, dated 7-15-2011] away from the Plaintiff as long as possible. See Exhibit 36, which is a CDC FORM 695, dated Jan. 12, 2015, And also emphasizing, that the 3Rd level of this Appeal was, in effect, denied....

58   After the dismissal of case no. HC-8340 filed Oct. 29, 2014, the case was appealed in the 6th Appellate (San Jose) and the Administrative Mandamus, CCP§1094.5 was denied. Thereafter, the Plaintiff filed a "Petition for Review" in the California Supreme Court and, because it was filed one (1) day too late, the California Supreme Court denied it — stating that — Plaintiff had defaulted.

59      In any event, the Plaintiff was precluded from exhausting his administrative remedies (on his prison grievance dated Apr. 22, 2012). And the State Courts did not address his case on the merits. Thereafter, he filed a Federal habeas corpus (case no. 15-CV-04897-EMC (San Fran): And a 42 USC§1983 Civil Rights Action (case no. 15-CV-05373-PJH) Oakland.

60      The Defendants filed a motion for "Summary Judgment (case no. 15-CV-05373), based on an "Exhaustion Issue", and the District Court dismissed the case "with prejudice". Noting that — about 1½ months — before the District Court dismissed his case with prejudice, the Plaintiff also paid for the $400. filing fee, because Defs' were trying to dismiss his case based on the PLRA..., 3 strikes.

61      The Plaintiff appealed to the 9th Circuit

(case no. 18-15032) and paid $505.00 filing fee. However, at this same [point and time] the Plaintiff filed a Fed. R. Civ. P. Rule 60(b) motion in regards to the District Courts' "Judgment to dismiss with prejudice; on Oct. 6, 2017. On Nov. 6, 2017, the District Court ruled on the 60(b) motion, and Amended the Judgment of Oct. 6, 2017. Thus, the District Court dismissed the case "Without Prejudice", and indicated in the conclusion, quoting "... if Plaintiff properly and fully exhausts his claims in the inmate grievance system he may file a new case..." unquote. See Exhibit A, which is the "Amended Judgment", pg. 4, Lines 5-11.

62        Accordingly, the Plaintiff immediately initiated a new 602/Appeal process in order to properly and fully exhaust, as recommended by the District Court. Therefore, on Nov. 21, 2017, the Plaintiff filed the new 602/Appeal, Log No. SVSP-17-7103 (2-pages) and under - FOR STAFF USE ONLY, states "False RVR", dated Nov. 21, 2017; and in order to file a new §1983 Civil Rights Complaint, Notwithstanding, the Appeals Office, (at SVSP) cancelled out the "new 602/Appeal dated Nov. 21, 2017, as being untimely. See Exhibit G, which is said new 602/Appeal...

63        Wherefore, on Dec. 11, 2017, the Plaintiff filed another 602/Appeal, Log No. SVSP-17-7694, challenging the "cancellation" of the 602/Appeal mentioned in paragraph 59. And noting in this 602/Appeal dated Dec. 11, 2017, under "supporting document", he attached a (4-page) Writ of Mandate, dated Dec. 11, 2017, and filed it in the Superior Court (Monterey), with proof of service to the "District Court (case no. 15-CV-05373), which is also in the "District Courts' Docket Sheet" (Exhibit B) dated 12-19-2017, #121...

64        Emphasizing, that this Writ of Mandate [also dated Dec. 11, 2017] was an attempt to get the "Appeals Office" to comply with the [Amended] Judgment, dated Nov. 6, 2017. In any event, the Superior Court did not issue the Mandamus, and the Appeal Office did not comply with the Amended Judgment, to the extent, the District Court did not address it as well, by letting Plaintiff know what steps to take? See Exhibit F, which is said 602/Appeal Log No. SVSP-17-7694, dated Dec. 11, 2017, which is addressing the cancelled 602/Appeal, Log No. SVSP-17-7103 dated Nov. 21, 2017. ...

65        The Plaintiff raised up this matter in his 9th Circuit Appeal, Case No. 18-15032 (relating to the new 602/Appeal dated Dec. 11, 2017, and was not processed, as the District Court recommended), to his Pro Bono Attorney, in New York City. However, the Attorney indicated that she could not brief the issue, because, it wasn't raised in the District Court. The Plaintiff responded and indicated, that he did raise the matter in a

four (4) page Writ of Mandate, filed in the Superior Court, as mentioned above. And that it was also in the District Courts docket sheet.

66    Moreover, the Plaintiff also informed his Pro Bono Attorney, that he had obtained "Newly Discovered Evidence" in 3-29-2018 (Exhibit 31); Being the MAIL-CARD (see FACTS 41-49), as it reflects in Exhibit 30; Thus Requesting for it to be Raised in her (Attorney) briefing, since the mail-card related to the "CONFIDENTIAL-MAIL" matter, that was at issue during the Summary Judgment proceeding. However, the Pro-Bono Attorney informed Plaintiff she could'nt Raise it up in her briefing, because, it wasn't brought up in the District Court. Thus, the Defendants' indicated in their Response to the Pro Bono Attorney's Briefing, saying in said Response, that she did NOT offer any evidence that proved that the "CONFIDENTIAL-MAIL" was submitted to the mail Room.

67    The 602/Appeal Log No. SVSP-17-07694, marked as Exhibit F-5, and filed on DEC. 11, 2017, which was denied, but exhausted at the third Level, TLR, Case No. 1801390, quoting under "III THIRD LEVEL DECISION: Appeal is denied. A. FINDINGS: Upon Review of the appellant's submitted documentations, the examiner has determined that the appeal Log # SVSP-17-07103 has been appropriately reviewed and evaluated by the institution. Pursuant to CCR 3005, inmates and parolees shall obey all Laws, Regulations, and Local procedures. The appellant attempted submitted an appeal pertaining to an issue that occurred over six years ago. Therefore, the cancellation of appeal Log # SVSP-17-07103 is in accordance with the CCR 3084.6. Rejection, Cancellation, and Withdrawal Criteria. The appellant has exceeded time Limits and the appellant had the opportunity to file within the prescribed time constraints. As such, appeal Log # SVSP-17-07103 shall not be accepted for processing. Relief shall not be afforded at the TLR. B. Basis For The Decision: CCR: 3001, 3004, 3005, 3084.1, 3084.2, 3084.3, 3084.4, 3084.5, 3084.6, 3084.7, 3084.8, 3380, 3391. C. ORDER: No changes or modification are required by the Institution. This decision exhausts the administrative remedy available to the appellant within CDCR." unquote. See Exhibit F-5, which is the THIRD LEVEL APPEAL DECISION, dated Apr. 30, 2018.

68    In any case, the Plaintiff attempted to Resolve his case (15-CV-05373) by having it Reinstated back to the District Court, because CDCR had Refused to process his new 602/Appeal, which was the recommendation or Requirement of the District Court, which Plaintiff had to do before filing a new §1983 Civil Rights complaint.

69    On 11-19-2020, Plaintiff had his Pro Se "Petition for Review" (Case No. 20-5675) ready for photocopying, in order to meet his

dead-line of DEC. 4, 2020, in the U.S. Supreme Court. Noting, that the Librarian did not Reply until 12-2-2020, and did not mention anything about granting photo-copy service. See Exhibit O, which is a CDCR-22 REQUEST FORM, under SECTION B: STAFF RESPONSE, dated 12-2-2020. As a Result of the Librarian's inaction, he was precluded from meeting his dead-line of DEC. 4, 2020. Therefore, he would like to join the Civil Rights action to his Related case no. 2:21-CV-01415/ SAC.

70    In short, the Plaintiff stated on page 8, under "CONCLUSION" of his "Petition for Rehearing" to the U.S. Supreme Court, quoting -- "This new 602/Appeal that Petitioner filed was cancelled out as untimely by the prison. Should the D.C. Reinstate the case."? unquote. See Exhibit H, which is said petition dated 11-19-2020. Accordingly, the U.S. Supreme Court may have Reinstated the case to the District Court, based on the non compliance of the Appeals Coordinators of processing to new 602/Appeal (as the D.C. directed the Plaintiff) being based on the fact, the 602/Appeal dated Apr. 22, 2012 was lost on purpose, because, they knew the written reports dated 7-15-2011, were altogether fabricated on their face.

71    On January 22, 2021, the U.S. Supreme Court issued an ORDER, saying in Relevant part -- "The petition for Rehearing in the above-entitled case was postmarked Jan. 7, 2021 and received January 15, 2021 and is herewith returned as out-of-time"... and -- "the petition for Rehearing was due on or before December 4, 2020, unquote.

72    The Plaintiff made other "good-faith-efforts" to Resolve, and/or Reinstate the case 15-CV-05373, before filing a new §1983 Civil Rights Complaint. For instance in 2020, he filed an "ALL Writs Act in the District Court (Oakland) and it was denied. And he also filed a "Writ of CORAM NOBIS", In support of 18 USC § 3626$^{(a)(1)(A)}$ Motion, necessary to correct the Violation of the Federal Right", unquote. This Writ of "CORAM NOBIS" was related to an on-going pattern of "Access to the Courts" (EXHIBIT-40) And as noted above, he would like to join this case to -- 2:21-CV-01415. The Writ of CORAM NOBIS/was filed in the 9th Circuit, case no. 22-70091, on MAY 04-2022, and was denied.
73    The Plaintiff is alleging an on-going of "Retaliation" in this new §1983 Civil Rights Action that actually initiated at Pleasant Valley State Prison in 2008. For instance, the Plaintiff's cell-mate self-inflicted a cut on his back, then came down on the cell floor (as if coming down for chow), and begun busting the fan on the floor, loudly! Almost immediately, the Officers approached the cell (as if going to an active crime scene). All the while, the Plaintiff was sitting down on his bunk drawing.

74    In any event, when his cell mate (ORROZCO) exited the cell-door, the Plaintiff saw blood trekking down his back (and knew that he was setting

up the Plaintiff), Thereafter, the Plaintiff and ORROZCO signed "compatibility chronos from the holding cages, and ORROZCO claimed he fell off his top bunk. Moreover, prison officials knew that there wasn't any signs or physical evidence of any fighting activity in the cell (except a busted fan, noting that he had flushed something down the toilet. It was obvious to the officers that ORROZCO had self-inflicted the cut on his back, and they still placed the Plaintiff in Ad. Seg. See Exhibit 41, which is the RVR, and Exhibit 42, which is the "Compatibility Chrono" signed by the Plaintiff and ORROZCO, Therefore, the Plaintiff shouldn't have been taken to Ad Seg, and moving ORROZCO to another cell would have had resolved the problem.

75       A disciplinary hearing was conducted, and the (SHO) found the Plaintiff guilty of fighting, even though there was no evidence of fighting. The standard used in a disciplinary hearing is the "preponderous of the evidence. Thereafter, the Plaintiff was not released from Ad Seg into the general population, and remained in Ad Seg for another 18 months, until 2010. Noting, that Plaintiff was never given a SHU term for the incident, and should had been released to the General Population.

76       On top of that, the Plaintiff was imposed an "adverse transfer". Upon arriving at CMC-East, the Plaintiff was placed in Ad Seg. Another act of retaliation for filing prior litigation. The Plaintiff filed a STATE TORT in the Superior Court (San Luis Obispo). The Superior Court indicated that he had failed to file an In Forma Pauperis for the filing fee, or exhausted his administrative remedies, and dismissed it.

77       The acts of retaliation continued, because of Plaintiff's court filings — protected conduct activity — and after being in Ad Seg for awhile at CMC-East, the Plaintiff filed a §1983 Civil Rights Complaint in the District Court (Los Angeles, Central District). Noting, in the course of the litigation, the Plaintiff was chilled from pursuing the case. Altogether, the Plaintiff was held unjustifiably in AdSeg for 22 months.

78       Moreover, when the Plaintiff was transferred to EOP — Kern Valley State Prison — the prison officials continued to retaliate on him. For instance, when he was in group sessions, they would go into his cell, scratch his mirror, personal photos on the wall, threw out a large low-rider poster, and would slice his sheets. The misconduct was mainly carried out by C/o Castellano.

79       On or about 2011, the Plaintiff transferred to Salinas Valley State Prison (SVPS), And on 7-15-2011, the prison officials retaliated against him and framed him for "Assault with a deadly weapon (ADW) to commit Serious Bodily Injury (SBI),

and/or California Penal Code § 245(a)(1), because, he was challenging civil rights violations ... a "protected conduct". See Claim no. 4.

80   And Last of all, because of other related cases [to case no. 15-CV-05373], such as 18-CV-02895 and 21-C-0175, in Monterey and Kings counties, respectively. It should be noted, that CCI L. Cano retaliated against the Plaintiff, because during an interview in his office, the Plaintiff requested a certain document [which wasn't confidential] that related to the incident of 7-15-2011, and he refused to provide it. Thereafter, he informed CCI L. Cano, that he would request it from the Superior Court.

81   A few day later, CCI L. Cano approached the Plaintiff's cell-door with a document in his hand, which was a MEMORANDUM dated DEC. 14, 2021, and was actually a fraudulent document (California Penal Code §§ 132-134), saying that Plaintiff executed an assault for the Northern Structure (NS). Thus, Plaintiff has never been affiliated with the NS.

82   And noting, the MEMO was specifically fabricated for the "Board of Parole Hearing" (BPH), saying therein, quoting -- "This Notice of Confidential Information shall be available to the next hearing panel". unquote. See Exhibt L, which is said MEMO dated DEC. 14, 2021, by CCI X. Sheehan. Emphasizing, that the next BPH was held on 2-8-2022, and Plaintiff was denied parole for 5-years.

83.   Wherefore, the Plaintiff is requesting to consolidate this Civil Rights action to case no. 2:23-CV-00235-JDP. Noting that CCI L. Cano and CCI X. Sheehan knew that the BPH would be concerned about any acts of violent behavior, as the BPH stressed this factor in their Decision. See Exhibit N, under [HEARING COMMENTS], quoting -- " This person qualifies for the Elderly Parole Program and special consideration must be given to elderly inmate factors that may reduce their risk for violence". unquote. See Exhibit N, which is the BPH decision, dated 2-8-2022.

RELIEF

Wherefore, the Plaintiff is respectfully requesting declaratory relief, that Defendants (in case no. 15-CV-05373) at Salinas Valley State Prison, and Prison Officials at SAT-F State Prison violated the Plaintiffs' constitution and civil rights, and therefore is requesting to consolidate this instant §1983 Lawsuit to the related cases, case No. 2:21-CV-01415, and case No. 2:23-CV-00235...

That the Defendants may pay for the Cost of Lawsuit and Court fees;

That Plaintiff may be award attorneys fees;

Punity Damages of $350,000.^{00};
Exemplary Damages of $75,000.^{00};
Compensatory Damages of $25,000.^{00};
And any other Relief the Court deems equitable and proper....

VERIFICATION

I Robert Treviño ("Plaintiff") declare, verify, and attest under the Laws of the United States and under penalty of perjury, according to 18 USC §§ 1621 and 28 USC § 1746, that the foregoing is true and correct [in form and substance]. And as to those facts based on information and belief, I attest that they are true as well. Executed at Mule Creek State Prison, at Ione, CALIF, 95640, on or about March 15, 2023. Attached with 66 Exhibits; Civil Cover Sheet; and proof of service.

DATE: MARCH 15, 2023

RESPECTFULLY SUBMITTED
Mr. Robert Treviño
ROBERT TREVINO

(38 of 38)