UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TREVINO,<br><br>        Plaintiff,<br><br>    v.<br><br>E. DOTSON, et al.,<br><br>        Defendants. | Case No. 23-cv-01311-NW<br><br>**ORDER PARTIALLY GRANTING DEFENDANTS' MOTION TO DISMISS, REFERRING MATTER TO *PRO SE* PRISONER MEDIATION PROGRAM**<br><br>Re: ECF Nos. 51, 66 |

United States District Court
Northern District of California

Plaintiff Robert Trevino, a state prisoner, filed a *pro se* civil rights lawsuit alleging that Defendants (all corrections officers or employees) engaged in a conspiracy to frame him for assaulting a fellow prisoner in July 2011. *See* ECF No. 16 (Amended Complaint). Before the Court is Defendants' motion to dismiss Trevino's Amended Complaint. Defendants assert that Trevino fails to state a conspiracy claim against them; they also content that the claims Trevino alleged in his Amended Complaint are unexhausted and untimely. *See* ECF Nos. 51, 55, 66. Trevino filed an opposition and additional related briefing. *See* ECF Nos. 53, 67. The Court has considered the motion, briefs, and exhibits, and **PARTIALLY GRANTS** Defendants' motion.

## I. PROCEDURAL BACKGROUND

Trevino raised many of the same claims in a prior action, *Trevino v. Dotson, et al.*, Case No. 15-cv-05373-PJH ("*Trevino I*"), filed in 2015.[1] There, the Court (Hamilton, J.) dismissed Trevino's claims without prejudice after concluding that Trevino failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e. *See Trevino I*, ECF No. 112. The Court of Appeals

---

[1] The Court takes judicial notice of the docket and orders in *Trevino I*, No. 15-cv-05373-PJH. *See* Fed. R. Evid. 201(b); *see also Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014) (courts may take judicial notice of proceedings in other courts).

for the Ninth Circuit affirmed the district court's ruling on May 1, 2020. *See Trevino I*, ECF No. 136. The Supreme Court of the United States denied certiorari on November 9, 2020. *See Trevino I*, ECF No. 139.

On March 21, 2023, Trevino filed this case. *See* ECF No. 1. Following dismissal of Trevino's Complaint and reassignment of his matter to the undersigned, the Court screened and partially dismissed the Amended Complaint and granted Trevino leave to amend to address certain deficiencies. *See* ECF No. 35. The Court then issued several orders, including one denying Defendants' motion to dismiss without prejudice, after Trevino provided evidence that he never received the Court's order screening the Amended Complaint. *See* ECF Nos. 58. 59. After Trevino elected to move forward only with his cognizable claims, and the Court denied Trevino's additional proposed amendment, Defendants renewed their motion to dismiss on May 8, 2026. *See* ECF No. 66.

## II.    FACTUAL ALLEGATIONS

The Court briefly summarizes the relevant factual allegations in this matter.

### 1.    The Fight

Trevino's pending claims stem from a July 15, 2011 fight between him and another prisoner, Sanchez, at Mule Creek State Prison.[2] As relevant here, Defendants, Officers Ambriz, Anguiano, Vega, Dotson, Elias, Mendoza, Milenewicz, Perez, and Stevenson witnessed the fight, and provided statements regarding the incident. In their incident reports, Defendants stated that Trevino and Sanchez began fighting in the recreational yard. Because the men failed to comply with officers' orders to get down, the officers sprayed them with pepper sprayed and shot them with a beanbag. Once both prisoners were handcuffed, Ambriz conducted a search of the area and allegedly recovered a "slashing weapon." ECF No. 16 at 61. Defendant Collier, a nurse, then performed medical evaluations of Trevino and the other prisoner. In his Amended Complaint Trevino alleges that Collier falsified reports that Sanchez had been slashed on the cheek and elbow.

---

[2] Unless otherwise specified, all factual allegations in this section are from the Amended Complaint and its exhibits. *See* ECF No. 16.

United States District Court
Northern District of California

Trevino further alleges that Ambriz planted the weapon at the scene and conspired with Anguiano, Collier, Dotson, Elias, Mendoza, Milenewicz, Perez, Servier, Solis, Stevenson, and Vega to frame Trevino for slashing Sanchez when the incident was limited to a fistfight. Trevino claims that each of the Defendants wrote false statements or reports to accuse Trevino of slashing Sanchez; Trevino asserts Stevenson signed off on Ambriz's false report about the incident, and Ambriz and Solis signed off on the other officers' reports. The incident reports were provided to the Monterey County District Attorney's Office for potential prosecution.

### 2. Disciplinary Proceedings

After the altercation, Trevino was issued a rules violation report for assault with a deadly weapon to commit great bodily injury. Trevino alleges that although Defendants Piazano, Lord, and Waterman were each assigned to be an Investigating Employee ("IE") to assist him with preparing for his disciplinary hearing, none of those Defendants helped him. Piazano, the first IE assigned to Trevino, allegedly failed to interview witnesses and then falsely claimed that Trevino had refused assistance from an IE. Lord was assigned to replace Piazano; but Lord did not pick up Trevino's questions to interview witnesses or investigate the matter, delaying Trevino's disciplinary hearing. Lord was then replaced with Waterman, who "botch[ed]" the investigation. ECF No. 16 at 8. These Defendants were reportedly acting at the behest of Defendant Binkele so that Trevino could not defend himself properly from the rules violation report.

Trevino's disciplinary hearing took place on March 21, 2012. Defendant Hopkins, the Senior Hearing Officer, denied Trevino's request to call Sanchez as a witness or allow Sanchez to testify by phone. Hopkins also purportedly ignored an affidavit by Sanchez in which he claimed that officers stationed in the administrative segregation unit, where Sanchez was housed at the time, were "attempting to bribe [Sanchez] into testifying against [Trevino]." ECF No. 16 at 10. In addition, Hopkins reportedly referenced photos of Sanchez's injuries and fingerprint evidence found on the knife—evidence that Trevino was not provided—in finding Trevino guilty. Other evidence used against Trevino included allegedly fabricated notes and memoranda written by Defendants Cary, Newcomb, and Ross, in which they stated that Sanchez declined to (1) speak to officers, (2) sign a form authorizing release of his medical records, and (3) testify at the

disciplinary hearing.

Trevino was found guilty of the rules violation and placed in administrative segregation for one year; he was later denied parole.

### 3.    Grievances and Appeals

On April 22, 2012, Trevino allegedly attempted to mail an inmate grievance challenging the outcome of his disciplinary proceedings.  After he did not receive any information, Trevino sent a request for information to the Office of Appeals inquiring about the status of his grievance. He did not receive a response.  Trevino sent another request for information on August 1, 2012; Defendant Medina, who coordinated prisoner appeals at the time, informed Trevino that review of the database showed they had not received any grievance from him.  Within the same time frame, Trevino alleges that Medina and two mail room employees, Defendants Martinez and Benavides, conspired against him.  He contends they failed to record, in Trevino's prison mail card (the record that shows all mail sent and received by Trevino), that Trevino mailed his April 22, 2012 grievance.  These Defendants reportedly obscured evidence of Trevino's grievance to hide their fellow Defendants' misdeeds.

### 4.    Further Exhaustion Efforts

Following the Court's (Hamilton, J.) dismissal of *Trevino I*, Trevino again attempted to exhaust his claims by filing a new grievance on November 21, 2017.  The grievance was cancelled as untimely.  On December 11, 2017, Trevino challenged the cancellation of his grievance, but his appeal was denied by Binkele on January 23, 2018.  Trevino's final, third-level appeal was denied on April 30, 2018, by Defendant Voong.  After that denial, Trevino reportedly filed a petition for writ of mandate in state court seeking that the California Department of Corrections and Rehabilitation ("CDCR") process his grievance and appeals.  *See* ECF No. 53 at 12.  Per Trevino, the state court entered judgment in that matter in July 2019.  *Id.* at 33.  Neither party provides further information about the state court lawsuit.

### III.    LEGAL STANDARD

The pending motion seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state

United States District Court
Northern District of California

a claim upon which relief can be granted. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted). While a complaint does not need detailed factual allegations, it must proffer "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a motion to dismiss, a court must accept as true all material allegations in the complaint, but it need not accept as true "legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). Although review is limited to the contents of the complaint, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice— without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**IV.    ANALYSIS**

Defendants assert that they are entitled to dismissal of the Amended Complaint because Trevino fails to state a claim for conspiracy, and his claims are unexhausted and untimely. *See* ECF No. 51. The Court considers each argument below.

**A.    Failure to State a Claim**

As noted, Defendants argue that Trevino failed to allege a cognizable claim of civil conspiracy. Specifically, they argue that Trevino "has not alleged facts showing Defendants reached a unity of purpose or common design and understanding or that each defendant shared the common objective of the conspiracy." *See* ECF No. 51 at 22; *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999) (plaintiff prosecuting civil conspiracy claim must show conspiring parties reached a unity of purpose or common design and may do so through circumstantial evidence arising from that party's actions). In screening Trevino's

United States District Court
Northern District of California

United States District Court
Northern District of California

Amended Complaint, the Court noted Trevino's allegations; namely, that Defendants conspired to "(1) frame him for allegedly slashing Inmate Sanchez with a knife on July 15, 2011; (2) cover up officer misconduct associated with the false accusations against Trevino; and (3) subject him to a Three Strikes sentence of life imprisonment." ECF No. 34 at 3; *see also* ECF No. 16 at 5–13. The Court found that Trevino stated a cognizable civil conspiracy claim against Ambriz, Anguiano, Binkele, Cary, Collier, Dotson, Elias, Hopkins, Lord, Mendoza, Medina, Milenewicz, Newcomb, Perez, Piazano, Ross, Servier, Solis, Stevenson, Vega, Voong, and Waterman. ECF No. 34 at 9–10. While it is unclear whether Trevino can prevail on his conspiracy claims on the merits, the Amended Complaint sufficiently alleges facts showing unity of purpose. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (*pro se* pleadings must be liberally construed). Defendants' arguments to the contrary therefore fail.

### B.    Failure to Exhaust

Defendants also argue that Trevino failed to exhaust his claims.

#### 1.    Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 84. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91 (footnote omitted). Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Defendants have the burden of raising and proving the absence of exhaustion, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints.

6

*Jones*, 549 U.S. at 215–17. Nevertheless, a district court may consider the issue of exhaustion where the issue of exhaustion can be decided on the face of the complaint. *See Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

### 2. Analysis

Here, there is no dispute that Trevino's claims were not properly exhausted. But in limited circumstances, a prisoner who fails to exhaust his administrative remedies may continue pursuing his federal civil rights claims where he can show that the administrative remedy was unavailable. *See Ross v. Blake*, 578 U.S. 632, 643 (2016). Specifically, there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id*. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Third, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

As noted by the Court in its screening order, liberally construing the Amended Complaint, Trevino states a cognizable claim that several Defendants interfered with his access to the courts, in part based on their alleged interference with Trevino's ability to file and process his grievances. *See* ECF No. 34 at 11. Accordingly, the Court denies Defendants' argument in their motion to dismiss—that Trevino failed to exhaust his administrative remedies before bringing this action—because it requires the Court to consider the merits of Trevino's claims.[3]

### C. Timeliness

Defendants also argue that all of Trevino's claims are untimely. Section 1983 does not

---

[3] In their reply, Defendants argue for the first time that the summary judgment order in *Trevino I* proves that Trevino's administrative remedies were available to him in 2012. *See* ECF No. 55 at 4. Because Defendants did not make this argument in their motion, and only superficially raise this argument in their reply—failing to discuss any factors or case law showing that the question of the availability of Trevino's administrative remedies is subject to issue preclusion or collateral estoppel—the Court defers ruling on this issue unless and until it is fully briefed by both parties.

contain its own limitations period.  Instead, the appropriate limitations period is based on the forum state's statute of limitations for personal injury torts.  *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985), *partially superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–78 (2004).

In California, the applicable statute of limitations is the two-year period set forth at California Civil Procedure Code § 335.1.  *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *see also Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999) (citing prior statute and noting that limitations period for filing § 1983 action in California is governed by residual limitations period for personal injury actions in California).

Federal law, however, determines when a cause of action accrues and the statute of limitations begins to run in a § 1983 action.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999), *partially superseded by statute as stated in R.R. Donnelley & Sons Co.*, 541 U.S. at 377–78.  A federal court must give effect to a state's tolling provisions.  *See Hardin v. Straub*, 490 U.S. 536, 543–44 (1989); *Marks v. Parra*, 785 F.2d 1419, 1419–20 (9th Cir. 1986).

### 1.    Accrual

In screening the Amended Complaint, the Court found the following cognizable claims:

- Claims of interference with Trevino's First Amendment right to access the courts by Defendants Benavides, Medina, and Martinez;

- Claims of conspiracy to violate Trevino's Fourteenth Amendment due process rights based on alleged planting of a weapon, suppression of attempts to file grievances, and falsification of incident and medical reports by Defendants Ambriz, Anguiano, Benavides, Binkele, Cary, Collier, Dotson, Elias, Hopkins, Lord, Martinez, Medina, Mendoza, Milenewicz, Newcomb, Perez, Piazano, Ross, Servier, Solis, Stevenson, Vega, Voong, and Waterman; and

- Claims that Trevino's Fourteenth Amendment right to due process was violated by Defendants Binkele, Hopkins, Lord, Piazano, and Waterman, with respect to Trevino's

disciplinary hearing for the July 15, 2011 incident.

Liberally construing the allegations in the Amended Complaint, the conspiracy and due process claims against Ambriz, Anguiano, Collier, Dotson, Elias, Mendoza, Milenewicz, Perez, Servier, Stevenson, Solis, and Vega accrued on or shortly after July 15, 2011—the date of the incident/medical reports and RVR issued against Trevino. The conspiracy claims against Binkele,[4] Cary, Hopkins, Lord, Newcomb, Pizano, and Ross accrued sometime between July 15, 2011, and March 21, 2012, the date of Trevino's disciplinary hearing. The First Amendment claims against Medina accrued on August 1, 2012, the date Trevino learned that his initial grievance challenging the results of his disciplinary hearing had not been processed. Moreover, based on Trevino's allegations in the Amended Complaint, the conspiracy and access to courts claims against Benavides and Martinez accrued in April 2018, when Trevino was provided with a copy of his mail card.[5] Similarly, the conspiracy and due process claims against Voong accrued in approximately April 2018, when Voong denied Trevino's third level appeal following the dismissal of his unexhausted claims in *Trevino I*.

### 2.    Statutory Tolling

As a *pro se* prisoner, Trevino is entitled to statutory tolling for his § 1983 claims. California Code of Civil Procedure § 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term of less than for life." Cal. Code of Civ. P. § 352.1(a). But imprisonment only delays the accrual of a cause of action for a maximum of two years. *See id.* Accordingly, Trevino is entitled to statutory tolling of two years (*see* Cal. Code of Civ. P. §§ 335.1, 352.1(a)), in addition to the applicable two-year statute of limitations.

---

[4] To the extent that Binkele was also involved in denying Trevino's 2017 appeal, the due process claim arising from those actions accrued on January 23, 2018, when Binkele denied the appeal.

[5] Defendants argue that these claims accrued in April and June 2012, when Benavides and Martinez allegedly failed to log Trevino's grievance. *See* ECF No. 51 at 17. But Trevino alleges in his Amended Complaint that he did not become aware of the fact that his mail card had been "altered" to hide evidence until he received a copy of his mail card from Defendant Martinez on April 4, 2018. *See* ECF No. 16 at 23 & 41. As the Court must assume the truth of Trevino's factual allegations at this stage, the Court considers April 4, 2018, as the accrual date. *See Clegg*, 18 F.3d at 754–55.

### 3.    Equitable Tolling

In his opposition to the motion to dismiss, Trevino argues that he is entitled to equitable tolling.  "Equitable tolling under California law operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness."  *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004) (citing *Lantzy v. Centex Homes*, 73 P.3d 517, 523 (Cal. 2003)) (citation modified).  "The purpose of California's equitable tolling doctrine 'is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.'"  *Id.* (citing *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir. 2001) (en banc)).

Here, Trevino alleges that he is entitled to equitable tolling based on alleged deliberate indifference by Defendants, the continuing violations doctrine, and his prior federal litigation.  *See* ECF No. 55.  The Court considers each argument below after first addressing the tolling that is applicable to Trevino's exhaustion efforts.

### a.    Tolling for Exhaustion

The statute of limitations is tolled for the period that a prisoner administratively exhausted his underlying grievances pursuant to the requirements of the Prison Litigation Reform Act ("PLRA").  *See Soto v. Unknown Sweetman*, 882 F.3d 865, 875 (9th Cir. 2018) (holding that a prisoner "is entitled to tolling [of the applicable statute of limitations] while he was actively exhausting his remedies" under the PLRA); *Brown v. Valoff*, 422 F.3d 926, 942–43 (9th Cir. 2005) ("the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process").

*Claims Accrued On/Before August 1, 2012*:  Here, neither party discusses tolling related to Trevino's attempts to exhaust his claims.  Liberally construing the Amended Complaint, Trevino is entitled to tolling for the time between the accrual of his initial claims until at least August 1, 2012, when Trevino was made aware that his grievance challenging the rules violation report and disciplinary hearing had not been filed.  The following claims are therefore subject to equitable tolling until August 1, 2012:  (1) the claims of conspiracy against Ambriz, Anguiano, Binkele, Cary, Collier, Doston, Elias, Hopkins, Lord, Mendoza, Milenewicz, Newcomb, Perez, Pizano,

10

United States District Court
Northern District of California

Ross, Servier, Solis, Stevenson, Vega, and Waterman; and (2) the due process claims against Binkele, Hopkins, Lord, Piazano, and Waterman with respect to Trevino's disciplinary proceeding. Even accounting for the applicable two-year statutory tolling and two-year statute of limitations, the statute of limitations for these claims expired in August 2016—more than one year before Trevino attempted to exhaust his claims a second time in November 2017, and nearly seven years before he filed the instant lawsuit on March 21, 2023. *See* ECF No. 1. Without further tolling, these claims are untimely. Similarly, the First Amendment claim against Medina, which accrued on August 1, 2012, was not challenged administratively until November 2017, more than one year after the statute of limitations expired on August 1, 2016. Without further tolling, this claim is also untimely.

*Claims Accrued After* Trevino I *Dismissal:* In contrast, based on the allegations in the Amended Complaint, the conspiracy and First Amendment claims against Benavides and Martinez, and the conspiracy and due process claims against Binkele and Voong arising from the denial of the second set of grievances and appeals did not accrue until April 2018, when Trevino allegedly discovered the factual basis for these claims. In his opposition to the motion to dismiss, Trevino explained he attempted to exhaust his claims through a state writ of mandate proceeding until July 2019.[6] *See* ECF No. 53 at 33. If Trevino's allegations regarding his state court writ of mandate proceedings are accurate, considering the applicable two-year statutory tolling and the two-year statute of limitations, Trevino may be able to show that the statute of limitations for these claims did not end until July 2023, and that these claims were timely filed.

Accordingly, Defendants have not shown that the conspiracy and First Amendment claims against Benavides and Martinez, and the conspiracy and due process claims against Binkele and Voong arising from their denial of the second set of grievances and appeals, are untimely. These claims may proceed.

### b.     Tolling for Alleged Deliberate Indifference

Trevino alleges he is entitled to equitable tolling because the acts maintaining the false

---

[6] Defendants do not discuss the state writ of mandate proceedings in their briefing.

charges against him amounted to deliberate indifference and torture. *See* ECF No. 53 at 1–4. Trevino does not explain why his new characterization of the same underlying incidents, which took place in 2011 and 2012, would entitle him to tolling. For the same reason, any attempt to amend his complaint to include new Eighth Amendment claims based on the underlying incidents would be futile. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal."). This argument fails. Trevino does not show he is entitled to additional equitable tolling on this ground.

### c.    Tolling for Continuing Violations

Additionally, Trevino alleges that Defendants' interference with his ability to exhaust his claims and their concealment of evidence, such as fingerprint evidence from the weapon used to attack Sanchez, constitute continuing violations that entitle him to equitable tolling. *See* ECF No. 53 at 12–14. He also alleges several new incidents that he argues entitle him to tolling under the continuing violations doctrine.

The continuing violation doctrine is an equitable doctrine designed "to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort." *O'Loghlin v. Cnty. of Orange*, 229 F.3d 871, 875 (9th Cir. 2000). The Ninth Circuit has "recognized two applications of the continuing violations doctrine: first, to 'a series of related acts, one or more of which falls within the limitations period,' and second, to 'the maintenance of a discriminatory system both before and during [the limitations] period.'" *Bird v. Dep't of Human Services*, 935 F.3d 739, 747 (9th Cir. 2019) (alteration in original) (quoting *Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 259 (9th Cir. 1997)). In 2002, the Supreme Court severely limited the application of continuing violations theory by holding that "discrete . . . acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete . . . act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Instead, a plaintiff is entitled to equitable tolling under this theory only where he or she shows "'the maintenance of a . . . system[atic policy or practice] both before and during [the limitations] period.'" *Bird*, 935 F.3d at 747–48 (citation modified). The

12

Ninth Circuit has subsequently acknowledged that "little remains of the continuing violations doctrine," including the use of serial acts, which is "virtually non-existent"; courts in the Ninth Circuit have also "consistently refused to apply [even] the systematic branch to rescue individualized claims that are otherwise time-barred." *Id.* at 748.

*Alleged Concealment*:  At the outset, to the extent that Trevino alleges that continued concealment of certain evidence entitles him to equitable tolling, the Court notes that any alleged concealment of evidence has not stopped Trevino from being aware of the basis for his pending claims.  *See, e.g., Briley v. State of Cal.*, 564 F.2d 849 (9th Cir. 1977) (holding that plaintiff entitled to equitable tolling where fraud or concealment of evidence caused plaintiff not to discover basis of claim until later).  Accordingly, Trevino fails to establish the alleged concealment entitles him to additional tolling beyond the date on which he discovered the factual basis for his claims.

*New Allegations*:  Trevino attempts to raise several discrete, new allegations.  Yet even if the systematic branch of the continuing violations doctrine could extend his tolling period, neither Trevino's Amended Complaint nor his opposition allege any systemic policy or practice.  *See Bird*, 935 F.3d at 747–48.

Trevino first alleges that a nonparty prison librarian delayed a response to his request for copies so he could file a petition for rehearing in the Supreme Court for *Trevino I*, causing him to miss his deadline, which Trevino describes as a "continuing violation" of his right to access the courts.  *See* ECF No. 53 at 13.  The alleged violation, which took place in November 2020, was not included in Trevino's Amended Complaint, and does not involve the Defendants in this matter.[7]  Moreover, even if the incident could be considered related to the incidents at issue, Trevino fails to allege facts showing that the discrete incident was part of a systemic policy or practice entitling him to equitable tolling.  *See Clegg*, 18 F.3d at 754–55 (a district court need not

---

[7] The Court also notes that, to properly allege a violation of his access to the courts based on the petition for rehearing incident, Trevino would need to show his petition was nonfrivolous.  *See Lewis v. Casey*, 518 U.S. 343, 350–51 (1996).  As he has not done so, even if Trevino had raised this incident as a separate claim in his Amended Complaint, it would have been dismissed.  *See Wheeler*, 894 F.3d at 1059.

United States District Court
Northern District of California

assume truth of "legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged."); *see also Reid v. City of Oakland*, No. 25-cv-00383-JST, 2025 WL 217221, *6–7 (N.D. Cal. Jul. 31, 2025) (rejecting application of continuing violations doctrine where plaintiff made "bare-bones, conclusory attempts to connect [a new incident] with her 'kidnapping' [more than 15 years later].").

Trevino also alleges in his opposition that, in a separate incident, "prison officials at [Mule Creek State Prison]" falsely accused him of assaulting another prisoner on behalf of a prison gang, something Trevino claims he did not discover until a nondefendant officer delivered a memo to him in 2021. ECF No. 53 at 14. He also alleges a recent incident during which "officials" "set [him] up" to be assaulted in 2025. *Id*. Neither of these allegations have been incorporated into the Amended Complaint, and Trevino has not shown that adding these new claims would be permissible under Federal Rule of Civil Procedure 20. *See Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (under Rule 20, joinder is inappropriate where "[e]ach claim raises potentially different issues, and must be viewed in a separate and individual light by the Court."); *Denham v. Aranda*, No. 09CV1505 JLS, 2012 WL 3561988, *3 (S.D. Cal. Aug. 17, 2012) (denying joinder where additional claims were "sufficiently distinct from the [initial claim of retaliation] that they do not make up the same 'series of transactions or occurrences' for purposes of Rule 20."). In any event, Trevino does not show any relation between these new allegations and the claims at issue such that these alleged events could be considered part of an ongoing policy or practice for purposes of establishing a continuing violation. *See Clegg*, 18 F.3d at 754–55; *Bird*, 935 F.3d at 747–48; *Reid*, 2025 WL 217221, at *6–7.

Trevino has not shown he is entitled to additional equitable tolling based on the continuing violations doctrine.

### d.    Tolling for Prior Federal Litigation

Trevino is also not entitled to tolling based on the pendency of his prior federal lawsuit.

<u>Tolling Under</u> Addison:  California law allows for tolling in a lawsuit:

when an earlier suit was filed and where the record shows: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.

*Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) (citing *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (Cal. Ct. App. 1983) and *Addison v. State*, 578 P.3d 941, 943–44 (Cal. 1978)) (citation modified). Such tolling does not apply when the two lawsuits were filed in the same forum. *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1018 (C.D. Cal. 2011) ("In *Addison*, . . . the California Supreme Court [] explained that the doctrine of equitable tolling applies when a plaintiff has several legal remedies and reasonably, and in good faith, pursues one. . . . California's equitable tolling doctrine does not apply in this case because this case and [the first] were filed [both filed in] this Court."); *see also Jamison v. Garza*, No. 16-cv-00318-BAM, 2017 WL 3226472, at *4 (E.D. Cal. July 31, 2017) ("[W]hen a plaintiff does not pursue one remedy when several are available, but instead repeatedly pursues the same claim in the same forum, equitable tolling does not apply[.]"). Here, because Trevino filed both actions in the same forum, *i.e.*, this Court, he is not entitled to this type of equitable tolling. *See Gibbs v. Wood*, No. 15-cv-4115-TEH, 2017 WL 1407727, *3–4 (N.D. Cal. Apr. 20, 2017) (rejecting application of equitable tolling in § 1983 lawsuit where plaintiff's prior lawsuit was dismissed without prejudice for failure to exhaust administrative remedies); *Peoples v. Machuca*, No. 19-cv-05468-RMI, 2025 WL 1906793, *3–4 (N.D. Cal. Jul. 10, 2025) (same).

*Tolling Under* Bollinger: In addition, under the so-called "*Bollinger* rule," "a plaintiff may also argue the statute of limitations should be tolled based on the filing of an earlier, timely action based upon general equitable principles[.]" *Carranza v. Lewis*, No. 15-cv-00682-YGR, 2017 WL 1050538, at *19 (N.D. Cal. Mar. 17, 2017) (citing *Bollinger v. National Fire Ins. Co.*, 25 Cal. 2d 399 (1944) and *Addison*, 21 Cal. 3d at 318–19). The *Bollinger* rule applies where the plaintiff shows that three factors are met:

(1) the plaintiff [has] diligently pursued his or her claim; (2) the . . . plaintiff is left without a judicial forum for resolution of the claim [and the fact is] attributable to forces outside the control of the plaintiff, [*i.e.*, the dismissal of the first action was in error and, thus, due to forces outside of his own control]; and (3) the defendant [is not] prejudiced by application of the doctrine (which is normally not

15

a factor since the defendant will have had notice of the first action). *Carranza*, 2017 WL 1050538, at \*19 (quoting *Hull v. Cent. Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1336 (1994)).

In his opposition to the motion to dismiss, Trevino makes a conclusory argument that *Trevino I* should not have been dismissed. Nevertheless, he does not show that the Court (Hamilton, J.) in *Trevino I* erred in dismissing his first action, or that the case was dismissed due to forces outside of his own control. On the contrary, the Court's dismissal of *Trevino I* was affirmed by the Court of Appeals, and certiorari was denied by the Supreme Court. *See Trevino v. Dotson*, 803 Fed. App'x 145, 146 (9th Cir. 2020) (holding that, based on the evidence in the record, "[n]o reasonable jury could find that 'prison administrators thwart[ed] [Trevino] from taking advantage of a grievance process through machination, misrepresentation, or intimidation[.]'"). In sum, Trevino fails to show that the matter was dismissed in error or due to forces outside his control, and cannot meet the second *Bollinger* factor. He is therefore not entitled to equitable relief under *Bollinger*. *See Allen v. Greyhound Lines, Inc.*, 656 F.2d 418, 421 (9th Cir. 1981) ("[T]he California Supreme Court . . . limited *Bollinger* to its facts . . . [requiring that] plaintiff must demonstrate the existence of those three factors present in *Bollinger*[.]"); *see also Machuca*, 2025 WL 1906793, \*3 (rejecting equitable tolling under *Bollinger* where plaintiff's prior dismissal was due to his "fail[ure] to complete the administrative exhaustion process" and plaintiff failed to show matter was dismissed due to forces outside his control).

Accordingly, Trevino has not shown he is entitled to any additional tolling based on his prior federal litigation. Because no additional equitable tolling is due, Trevino's untimely claims, outlined above, are barred by the statute of limitations.

## V.    CONCLUSION

The Court orders as follows:

1. Defendants' motion to dismiss (ECF No. 51) is **PARTIALLY GRANTED**. All of Plaintiff's claims are deemed untimely except the following, which will proceed:

    a.   Claims of conspiracy against Benavides, Martinez, Binkele, and Voong;

    b.   Claims for interference with Trevino's First Amendment right to access the

16

courts by Benavides and Martinez.

2.  Plaintiff's untimely claims are **DISMISSED WITH PREJUDICE**:

    a.  Claims of conspiracy against Ambriz, Anguiano, Cary, Collier, Dotson, Elias, Hopkins, Lord, Medina, Mendoza, Milenewicz, Newcomb, Perez, Piazano, Ross, Servier, Stevenson, Solis, Vega, Waterman, and Binkele (except as it pertains to the claims arising from the denial of the second set of grievances and appeals).

    b.  Claims that Trevino's Fourteenth Amendment right to due process was violated by Defendants Binkele (except as it pertains to the claims arising from the denial of the second set of grievances and appeals), Hopkins, Lord, Piazano, and Waterman with respect to Trevino's disciplinary hearing for the July 15, 2011 incident.

3.  As no further claims remain against them, the following Defendants are **DISMISSED**: Ambriz, Anguiano, Cary, Collier, Doston, Elias, Hopkins, Lord, Medina, Mendoza, Milenewicz, Newcomb, Perez, Piazano, Ross, Salazar, Servier, Solis, Stevenson, Vega, and Waterman.

4.  In the interest of resolving this matter, the Court finds that a referral to the Northern District of California's *Pro Se* Prisoner Mediation Program is in order. This case is **REFERRED** to Magistrate Judge Robert M. Illman for a settlement conference. Judge Illman shall coordinate a time and date for the conference with all interested parties and/or their representatives and file with the Court a report of the result of the conference. The Clerk of the Court shall provide a copy of this Order to Judge Illman. If this matter is not settled, the Court will set a schedule for further briefing.

5.  It is Trevino's responsibility to prosecute this case. Trevino must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure

United States District Court
Northern District of California

to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated:  June 15, 2026

_____
Noël Wise
United States District Judge